UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22414-MC-O'SULLIVAN

IN THE MATTER OF THE EXTRADITION
OF TELMO RICARDO HURTADO HURTADO
_____/

UNITED STATES' RESPONSE IN OPPOSITION TO TELMO RICARDO
HURTADO-HURTADO'S REQUEST TO FILE MOTION

The United States, through its undersigned attorney, files this response opposing Telmo Ricardo Hurtado-Hurtado's request to file a motion to dismiss the extradition complaint, and for other relief.

The Proposed Motion to Dismiss

Telmo Ricardo Hurtado-Hurtado (hereinafter, Hurtado) seeks permission to file a motion to dismiss, and for other relief on the basis of double-jeopard. It is the position of the United States that extradition from the United States is primarily an executive function, governed by statute: 18 U.S.C. § 3181 et seq.

At this stage of the extradition proceeding, pursuant to 18 U.S.C. § 3184 et seq., it is only necessary that the government of Peru establish that:

> (1) The judicial officer is authorized to conduct the extradition proceedings;
>
> (2) The court has jurisdiction over the fugitive, Hurtado;
>
> (3) The applicable treaty is in full force and effect;
>
> (4) The crimes for which surrender is sought are included within the terms of the treaty; and

> (5) There is probable cause that the crimes were committed and that Hurtado participated in or committed them.

If the Court determines that all of the requisite elements have been met, the findings are incorporated into a certificate of extraditability. The certificate is forwarded to the Department of State. The Secretary of State makes the ultimate decision whether to surrender Hurtado to Peruvian authorities. 18 U.S.C. § 3186. There is no basis for dismissal. "[A] habeas petition is the only available avenue to challenge an extradition order." Vo v. Denov, 447 F.3d 1235, 1240 (9th Cir 2006) (appeal from denial of habeas petition). In summary, there is nothing to challenge at this time. The test of the legality of the extradition by the Magistrate Judge is designed to assess the evidence introduced to support the changes under the terms of the Peruvian treaty. If the Magistrate Judge certifies to the Secretary of State that this burden has been met, Hurtado may make his concerns known to her, and seek habeas corpus at the appropriate stage of the proceedings. Furthermore, even if a motion to dismiss were available to Hurtado, the reasons set forth in Hurtado's memorandum would not justify the filing of a motion to dismiss in this case.

The Extradition Treaty with the Republic of Peru

Hurtado seeks to raise a double jeopardy defense to defeat his extradition to Peru. He first relies on Article IV 1.(a) of the Extradition Treaty Between The United States of America and the Republic of Peru to support his position. By its wording, this Article does not support Hurtado's position. Hurtado has not been convicted or acquitted in the United States of America, the "Requested State, "for the offenses for which extradition is sought.

A claim of double jeopardy in an extradition proceeding is governed by the extradition treaty between the requested, or asylum state, and the requesting sovereign. In the case of In re the

Extradition of Hermine Ryan, 360 F. Supp. 270 (E.D.N.Y. 1973), Chief Judge Mishler explained this, in interpreting the extradition treaty between the United States and the Federal Republic of Germany.

> The double jeopardy claim must also fail. There is no constitutional right to be free from double jeopardy resulting from extradition to the demanding country. The fact that the full range of our constitutional protections will not be available to the detainee at her trial will not bar extradition. "Those provisions have no relation to crimes committed without the jurisdiction of the United States against the laws of a foreign country." Neeley v. Henkel, 180 U.S. 109, 21 S.Ct. 302, 45 L.E.d. 448 (1901); Holmes v. Laird, 148 U.S.App.D.C. 187, 459 F.2d 1211, 1217-1219 (1972). The extraditing court will not inquire into the procedures which await the detainee upon extradition; "the conditions under which a fugitive is to be surrendered to a foreign country are to be determined solely by the nonjudicial branches of the Government." Gallina v. Fraser, *supra* 278 F.2d at 79.Cf. Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 15444 (1957), in which the Supreme Court did not consider the nature of the procedures in Japanese courts in refusing to enjoin the Secretary of Defense from turning over an America soldier for prosecution in Japan for crimes committed on Japanese soil.

Ryan at 274.

In Ryan, as in this case, the only bar to extradition based on double-jeopardy was a treaty provision barring extradition if the person sought to be extradited had been convicted or acquitted in the United States for the same crime for which he was being extradited.

### The International Covenant on Civil and Political Rights

Hurtado also relies on Article 14(7) of the International Convention on Civil and Political Rights (hereinafter, the Covenant). In 1992, the Senate of the United States gave its advice and

consent to the Covenant. It did so, however, with a number of declarations and reservations. See United States Reservations, Declarations, and Understandings, International Covenant on Civil and Political Rights, 138 Cong. Rec. S4781-01 (daily ed. April 2, 1992). The relevant Senate language did not make Article 14(7) self-executing.

> III. The Senate's advice and consent is subject to the following declarations:
> (1) That the United States declares that the provisions of Articles 1 through 27 of the Covenant are not self-executing.

Chief Justice Roberts, writing for the Court in Medellin v. Texas, 128 S. Ct. 1346 (2008), explained the term "self-executing" as it applies to United States courts.

> This Court has long recognized the distinction between treaties that automatically have effect as domestic law, and those that-while they constitute international law commitments-do not by themselves function as binding federal law. This distinction was well explained by Chief Justice Marshall's opinion in Foster v. Neilson, 2 Pet. 253, 315, 7 L.Ed. 415 (1829), overruled on other grounds, United States v. Percheman, 7 Pet. 51, 8 L.Ed. 604 (1833), which held that a treaty is "equivalent to an act of the legislature," and hence self-executing, when it "operates of itself without the aid of any legislative provision." Foster, supra, at 314. When, in contrast, "[treaty] stipulations are not self-executing they can only be enforced pursuant to legislation to carry them into effect." Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888). In sum, while treaties "may comprise international commitments... they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms." Igartua-De La Rosa v. United States,
> 417 F.3d 145, 150 (C.A.1 2005) (en banc)( Boudin, C.J.).

>Medellin at 1356.

The Court further explained "self-executing" in a footnote.

> The label "self-executing" has on occasion been used to convey different meanings. What we mean by "self-executing" is that the treaty has automatic domestic effect as federal law upon ratification. Conversely, a "non-self-executing" treaty does not by itself give rise to domestically enforceable federal law.
>
> Id. fn2.

Article 14(7) of the Covenant, therefore, is not enforceable in the courts of the United States.

### The Rule of Non Inquiry

Hurtado, in his memorandum, indicates that he is in the process of employing an individual with knowledge of Peruvian law. Hurtado's hearing before the Court should not be delayed for this reason. See, e.q., Basso v. U.S. Marshal, 278 Fed. Appx. 886, 2008 WL 2066440 (C.A.11 (Fla.), wherein the Eleventh Circuit ruled, in addressing a habeas corpus petition in extradition stated that:

> [T]he rule of non-inquiry prevents an extradition magistrate, without exception, from assessing the receiving county's judicial system.
>
> Baso at 887.

## CONCLUSION

For the foregoing reasons Hurtado's request to file a motion to dismiss, and for other relief should be denied.

                                Respectfully submitted,
                                R. ALEXANDER ACOSTA
                                UNITED STATES ATTORNEY

By:    /s/ William White
        William White
        Assistant U.S. Attorney
        Florida Bar No. 087204
        99 N.E. 4th Street
        Miami, FL 33132
        Tel: (305) 961-9451
        Fax: (305) 536-4675
        Email: william.white@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-22414-MC-O'SULLIVAN**

**IN THE MATTER OF THE EXTRADITION**
**OF**
**TELMO RICARDO HURTADO HURTADO**
_____/

CERTIFICATE OF SERVICE

      I hereby certify that on January 23, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                          /s/ William White
                          William White

SERVICE LIST
IN THE MATTER OF THE EXRADITION
OF TELMO RICARDO HURTADO HURTADO
Case No. 08-22414-MC-O'SULLIVAN
United States District Court, Southern District of Florida


Sabrina D. Vora-Puqlisi
Assistant Federal Public Defender
Florida Bar No. 324360
150 West Flagler Street
Suite 1700
Miami, FL 33130-1556
Tel:  (305) 530-7000
Fax: (305) 536-4559
Email: sabrina_puglisi@fd.org
Method of Service: Notice of Electronic
Filing via CM/ECF


William White
Assistant U.S. Attorney
Florida Bar No. 087204
99 N.E. 4th Street
Miami, FL 33132
Tel:  (305) 961-9451
Fax: (305) 536-4675
Email: william.white@usdoj.gov
Method of Service: Notice of Electronic
Filing via CM/ECF