**28. HAVE YOU EVER BEEN ISSUED A U.S. VISA?**
☐ YES  ☒ NO
WHEN? _____
WHERE? _____
WHAT TYPE OF VISA? _____

**29. HAVE YOU EVER BEEN REFUSED A U.S. VISA?**
☐ YES  ☒ NO
WHEN? _____
WHERE? _____
WHAT TYPE OF VISA? _____

**30. HAS YOUR U.S. VISA EVER BEEN CANCELLED OR REVOKED?**
☐ YES  ☒ NO
WHEN? _____
WHERE? _____

**31. HAS ANYONE EVER FILED AN IMMIGRANT VISA PETITION ON YOUR BEHALF?**
☐ YES  ☒ NO

**32. ARE ANY OF THE FOLLOWING PERSONS IN THE U.S., OR DO THEY HAVE U.S. LEGAL PERMANENT RESIDENCE OR U.S. CITIZENSHIP?**
Mark YES or NO and indicate that person's status in the U.S. (i.e., U.S. legal permanent resident, U.S. citizen, visiting, studying, working, etc.).

☐ YES ☒ NO  Husband/Wife _____
☐ YES ☒ NO  Fiance/Fiancee _____
☐ YES ☒ NO  Brother/Sister _____
☐ YES ☒ NO  Father/Mother _____
☐ YES ☒ NO  Son/Daughter _____

**33. IMPORTANT: ALL APPLICANTS MUST READ AND CHECK THE APPROPRIATE BOX FOR EACH ITEM.**

A visa may not be issued to persons who are within specific categories defined by law as inadmissible to the United States (except when a waiver is obtained in advance). Is any of the following applicable to you?

- Have you ever been arrested or convicted for any offense or crime, even though subject of a pardon, amnesty or other similar legal action? Have you ever unlawfully distributed or sold a controlled substance (drug), or been a prostitute or procurer for prostitutes?  ☐ YES ☒ NO

- Have you ever been refused admission to the U.S., or been the subject of a deportation hearing, or sought to obtain or assist others to obtain a visa, entry into the U.S., or any other U.S. immigration benefit by fraud or willful misrepresentation or other unlawful means? Have you attended a U.S. public elementary school on student (F) status or a public secondary school after November 30, 1996 without reimbursing the school?  ☐ YES ☒ NO

- Do you seek to enter the United States to engage in export control violations, subversive or terrorist activities, or any other unlawful purpose? Are you a member or representative of a terrorist organization as currently designated by the U.S. Secretary of State? Have you ever participated in persecutions directed by the Nazi government of Germany; or have you ever participated in genocide?  ☐ YES ☒ NO

- Have you ever violated the terms of a U.S. visa, or been unlawfully present in, or deported from, the United States?  ☐ YES ☒ NO

- Have you ever withheld custody of a U.S. citizen child outside the United States from a person granted legal custody by a U.S. court, voted in the United States in violation of any law or regulation, or renounced U.S. citizenship for the purpose of avoiding taxation?  ☐ YES ☒ NO

- Have you ever been afflicted with a communicable disease of public health significance or a dangerous physical or mental disorder, or ever been a drug abuser or addict?  ☐ YES ☒ NO

A YES answer does not automatically signify ineligibility for a visa, but if you answered YES to any of the above, or if you have any questions about the above, a personal appearance at this office is recommended. If an appearance is not possible at this time, attach a statement of facts in your case to this application.

**34. WAS THIS APPLICATION PREPARED BY ANOTHER PERSON ON YOUR BEHALF?**  ☐ YES ☒ NO
(If answer is YES, then have that person complete item 35.)

**35. Application Prepared By:** NAME: _____
ADDRESS: _____
Relationship to Applicant: _____
Signature of Person Preparing Form: _____  DATE (mm-dd-yyyy) _____

**36.** I certify that I have read and understood all the questions set forth in this application and the answers I have furnished on this form are true and correct to the best of my knowledge and belief. I understand that any false or misleading statement may result in the permanent refusal of a visa or denial of entry into the United States. I understand that possession of a visa does not automatically entitle the bearer to enter the United States of America upon arrival at a port of entry if he or she is found inadmissible.

APPLICANT'S SIGNATURE  *TELMO HURTADO*
DATE (mm-dd-yyyy)  *DEC -02- 2002*

Privacy Act and Paperwork Reduction Act Statements

INA Section 222(f) provides that visa issuance and refusal records shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States. Certified copies of visa records may be made available to a court which certifies that the information contained in such records is needed in a case pending before the court.

Public reporting burden for this collection of information is estimated to average 1 hour per response, including time required for searching existing data sources, gathering the necessary data, providing the information required, and reviewing the final collection. You do not have to provide the information unless this collection displays a currently valid OMB number. Send comments on the accuracy of this estimate of the burden and recommendations for reducing it to: U.S. Department of State, A/RPS/DIR, Washington, D.C. 20520-1849.

DS-156    Page 2 of 2

An extradition certification should be ordered if the judicial officer finds the following:

    1. AUTHORITY TO CONDUCT THIS EXTRADITION PROCEEDING. The authority showing that this court is authorized to conduct the extradition proceeding is found at 8 USC § 3184 and Local Magistrate Rule1 (3).

    2. JURISDICTION OVER THE PERSON SOUGHT TO BE EXTRADITED. Again, 18 USC § 3184 gives this court jurisdiction over a fugitive found within the court's jurisdiction wh has committed crimes in a foreign nation tha are covered by an extradition treaty set-forth in 18 USC § 3181. The extradition treaty with Peru is listed in that section. Telmo Ricardo Hurtado Hurtado's identity as the person named in the complaint is confirmed by his description as found both on the Physical Description of the Person Sought (Exhibit 1, page 28) and on the Certificate of Registration found in Exhibit 1 at page 51. Also his date and place of birth listed in that document match those found an Exhibit 8 (a copy of his Peruvian passport); and, his date of birth and national registration number match those on the copy of his non-immigrant visa application, dated December 3, 2002 that he signed.. (Exhibit 9). And, of course his name is the same on all these documents.

    3. THE TREATY. That this applicable treaty is in full force and effect. This is shown both by 18 USC §3181 and the Declaration of Heather K. McShain found on the second page of Exhibit 7.

    4. DUAL CRIMINALITY. That the crimes for which the surrender is requested are covered by this treaty is shown by referring to Exhibit 1, beginning at page 37. Murder is a violation of Section 152 of the Peruvian Criminal Code of 1924 which was in effect at the time of these crimes. Equivalent United States laws are Florida Statute Section 782.04(Murder) and 18 USC § 1111 (Murder).
    Abduction is a crime punishable pursuant to Section 223 of the Peruvian Criminal Code of 1924, and Forced Abduction is a violation of Section 320 of the Peruvian Criminal Code of 1993. Equivalent United States laws are Florida Statute Section 787.01 (Kidnapping) and 18 USC § 1201 (again, Kidnapping).

    5. PROBABLE CAUSE. Finally, there is sufficient evidence to support a finding of probable cause that Hurtado committed each offense for which he is being extradited. Throughout the formal request for extradition beginning in relevant part on page 12 of Exhibit 1, Hurtado's actions are discussed again and again. The conclusion of the Supreme Court of Justice (Criminal Division) regarding the murder of 69 human beings is found, beginning on page 238 of Exhibit 1, listing the names of the 62 villagers murdered on August 14, 1985, by the military patrol under the command of then lieutenant Hurtado-Hurtado. His actions on September 13, 1985, in murdering six additional human beings who were probable witnesses to the August 14 killings is found at page 81 of Exhibit 1. Hurtado admits his actions in a statement beginning at page 324 of Exhibit 1, although Hurtado does not accurately acknowledge the number of victims. The forced abduction of the guide is described on p. 22 of Exhibit 1.

GOVERNMENT EXHIBIT
CASE NO. 08-22414-MC-JOS
EXHIBIT 10

TRA.0279-07/O-B

disappearing them so as not to leave any evidence of the commission of this crime, neglecting the fact that among them there were innocent and defenseless children who had nothing to do with the sociopolitical situation that our country was undergoing. It is based on this seemingly demented behavior that they would have murdered the members of a "Social Group".

In addition to the foregoing, the denounced **Telmo Ricardo HURTADO HURTADO** is also accused of being the alleged perpetrator of the following facts:

a) The forced disappearance of **Filomeno CHUCHÓN TECSI**, who would have been delivered to said denounced party by the members of the General Staff of Operations, through the intermediary of the officer César Gustavo MARTÍNEZ URIBE RESTREPO, Head of Section G-2 (Intelligence Officers), for him to serve as a "guide" to lead the patrol to the alleged Shining Path People's School, located in the Quebrada

María del Carmen Pizarro Sabogal
Traductora Pública Juramentada RM-0529-82-RE
CTP N° 0051: Miembro de ATA y ATPP
- 100 -

María del Carmen Pizarro Sabogal
Certified Public Translator

DEFENDANT'S EXHIBIT
CASE NO. 08 MC 22414 O'SULLIVAN
EXHIBIT NO. A

TRA.0279-07/O-B

Huancayocc-Lloccllapampa. This version was accepted by the accused party and, in an attempt to justify the disappearance of "Comrade Genaro, the pseudonym under which he was known by the members of the General Staff of Operations and by HURTADO HURTADO himself, he stated that such person attempted to escape when they were in the heights of Huambalpa during their return, which led the accused to shoot him, and as a result fell into a gully of difficult access. To date, nobody knows if he is still alive.

b) The Defendant Telmo Ricardo HURTADO HURTADO is accused of being the alleged perpetrator of the Crime Against Life, Physical Integrity and Health, in the form of Murder, to the Detriment of **Cecilio GAMBOA MENDOZA, Padua QUISPE CHUCHÓN, Ciriana QUISPE MARTÍNEZ DE GAMBOA, Agustina MELGAR DE BALDEÓN, Marcelina JANAMPA Viuda de PUJAICO, Brigida PÉREZ CHÁVEZ and Alejandro BALDEÓN PÉREZ**. The accusation is grounded on the fact that,

TRA.0279-07/O-B

after he became aware of the visit of the Investigating Commission of the Republic of Peru to the locality of Accomarca, he would have been expressly instructed by the members of the General Staff of Operations to "clean the zone" by disappearing any evidence and the witnesses, if any. To that effect, on September 13, 1985, he went to the locality of Accomarca accompanied by his Co-defendants. He arrived by helicopter at around 8 am, taking the aforesaid persons away from their homes and taking them to the cemetery of Accomarca, where they were shot to death. Afterwards, they left the place in the same helicopter. His criminal behavior was observed by Floriano QUISPE DE LA CRUZ. 

G) The denounced **Luis Armando ROBLES NUNURA** is accused of being the alleged perpetrator of the genocide committed on August 14, 1985 by the accused Telmo Ricardo HURTADO HURTADO and his military patrol called Lince Siete in Lloccllapampa, District of Accomarca, Province of

TRA.0279-07/O-B

put out the fire consuming César GAMBOA DE LA CRUZ'S house. The soldiers began to shoot at the woman, but as they were unable to make a direct hit, two soldiers returned and shot her at close range, leaving her dead[70]. The person killed was Juliana BALDEÓN GARCÍA, mother of Benita MEDINA BALDEÓN, wife of the owner of the house that was on fire.

115. The investigations that were carried out indicate that the guide Filomeno CHUCHÓN TICSE, also known as "Comrade Genaro" was also killed that day, presumably because he witnessed the crimes committed by the members of the patrol in Huancayocc.

Regarding this point, Second Lieutenant Telmo HURTADO did not offer a convincing explanation about what occurred to said person. For example, during the investigation he maintained that he shot the aforementioned person when he attempted

---

[70] TRC. Testimony rendered by Alberto PALACIOS RAMÍREZ, Op, cit.

María del Carmen Pizarro Sabogal
Traductora Pública Juramentada RM-0529-82-RE
CTP Nº 0051: Miembro de ATA y ATPP
- 569 -



TRA.0279-07/O-B

to flee to Huamballpa[71], on August 15, 1985. Nevertheless, during the trial, he stated that "when we were withdrawing with only half an hour before reaching Accomarca, the guide began to run. He was shot because he refused to stop, but I cannot be sure if he was injured or not because he jumped into a gully, never to be seen again"[72].

116. On the evening of that same day Telmo HURTADO met with the members of Lince Seis Patrol, commanded by Lieutenant RIVERA RONDÓN in Accomarca. Both groups stayed there until the next day. While they were there, the soldiers killed the villagers' animals (sheep, pigs and hens) to prepare food. According to Emeteria PÉREZ BALDEÓN[73] they proceeded to loot the villagers' homes and stores; the members of the patrol looted Adrian GOMEZ'S house and they took with them the valuables they found: money, artifacts, clothes, blankets, etc.

---

[71] Investigatory Statement rendered before the Military Court, on January 15, 1986 (pgs. 809-811 reverse side, docket, op, cit)
[72] Hearing in camera on October 13, 1987 (pgs. 978, docket, op, cit).
[73] Op, cit.