1                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
2                         MIAMI DIVISION
3             CASE NO. 08-MC-22414-UNA/O'SULLIVAN

   _____
4                                 |        MIAMI, FLORIDA
   UNITED STATES OF AMERICA,      |
5                                 |
                Plaintiff,        |        MAY 5, 2009
6                                 |
   vs.                            |
7                                 |
   TELMO RICARDO HURTADO,         |
8                                 |
                Defendant.        |
9  _____x
10
                   TRANSCRIPT OF EXTRADITION HEARING
11            BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
                 UNITED STATES MAGISTRATE JUDGE
12 APPEARANCES:
13 FOR THE GOVERNMENT:       WILLIAM C. WHITE, ESQ.
                             Assistant U.S. Attorney
14                           99 Northeast 4th Street
                             Miami, FL 33132      305.961.9451
15
16 FOR THE DEFENDANT:        SABRINA D. VORA-PUGLISI, ESQ.
                             Assistant Federal Defender
17                           150 West Flagler Street
                             Miami, FL 33130      305.530.7000
18
   REPORTED BY:              LARRY HERR, RPR-RMR-FCRR-AE
19                           Official United States Court Reporter
                             Federally Certified Realtime Reporter
20                           400 North Miami Avenue, Room 8N09
                             Miami, FL  33128      305.523.5290
21
22
23
24
25

TABLE OF CONTENTS

                                                              Page

Reporter's Certificate ................................... 27


                            CITATIONS


                                                             Page
Fernandez in the United States Supreme Court, 268

U.S. at 312 .............................................. 3


Galina vs. Fraser, F-r-a-s-e-r, 278 F.2d 77 ................ 19


In the Matter of Extradition of John Edward Berks .......... 21


Poxa vs. Levy, 465 F.3d 554 ................................ 3


United States vs. Fernandez vs. Morris ..................... 19

3

```
 1              THE COURT:  We are here today in the case of or In the

 2   Matter of the Extradition of Telmo Ricardo Hurtado-Hurtado,

 3   Case No. 08-MC-22414.

 4              Could I appearances, for the Government first?

 5              MR. WHITE:  Good afternoon, Your Honor.  William White

 6   for the United States accompanied by Special Agent Victor

 7   Williams.

 8              THE COURT:  Okay.  And who is Victor Williams with?

 9              MR. WHITE:  ICE, Your Honor.

10              THE COURT:  Okay.  And for Mr. Hurtado?

11              MS. PUGLISI:  Good afternoon.  Sabrina Puglisi,

12   Assistant Federal Defender, on behalf of Mr. Hurtado, who is

13   present and using the aid of a Spanish interpreter.

14              THE COURT:  Thank you.  You can be seated.

15              We're here today for an extradition hearing.  The

16   Government filed a brief back at the beginning of this case in

17   September called the United States Memorandum of Law in support

18   of their request for certification in which they lay out five

19   elements that the 3rd Circuit -- I'm sorry, that Fernandez in

20   the United States Supreme Court, 268 U.S. at 312, as well as

21   the 3rd Circuit, Poxa vs. Levy, 465 F.3d 554, cite to what is

22   required in order for the Court to issue an extradition

23   certification.

24              What I wanted to inquire with Mr. Hurtado's counsel is

25   whether or not you stipulate or require the Government to prove
```

4

1  each of these elements.  I'll go through them and you let me

2  know, Ms. Puglisi, if you want to stipulate or you are

3  contesting the Government's proof on a particular element.

4          MS. PUGLISI:  Yes, Your Honor.

5          THE COURT:  The first one is the judicial officer,

6  that would be me, is authorized to conduct an extradition

7  proceeding.  Do you stipulate to that?

8          MS. PUGLISI:  We do, Judge.

9          THE COURT:  The second one that the Court has

10  jurisdiction over the fugitive, that would be Mr. Hurtado.

11          MS. PUGLISI:  We stipulate to that.

12          THE COURT:  That the applicable treaty is in full

13  force and effect, that's the treaty that's been referred to

14  throughout these proceedings?

15          MS. PUGLISI:  We do stipulate to that.

16          THE COURT:  The fourth one is that the crime or crimes

17  for which surrender is requested are covered by the applicable

18  treaty.

19          MS. PUGLISI:  We would contest that issue.

20          THE COURT:  And that the fifth one, the final one, is

21  that there's sufficient evidence to support a finding of

22  probable cause as to each charge for which extradition is

23  sought?

24          MS. PUGLISI:  We contest that issue in part as to only

25  a few of the charges.

1          THE COURT:  Then let me hear from the Government on

2   how you would like to proceed today.

3          MR. WHITE:  Thank you, Your Honor.

4          Just so the record is clear, in the event there is a

5   petition for a writ of habeas corpus and an appeal from that,

6   I'd like to go over all of the elements briefly even though

7   they were stipulated to.

8          THE COURT:  Okay.

9          MR. WHITE:  First, Your Honor, I would like to

10  introduce for purposes of this hearing exhibits which are the

11  same exhibits that we have filed with the Court.  I would ask

12  the Court to take judicial notice of its own records which

13  include the complaint in extradition and all these exhibits

14  except for two.  The other two exhibits relate to the identity

15  issue which has been stipulated to.

16          So I would at this time offer Mr. Hurtado's passport

17  and a visa application, which these documents, as Exhibits 8

18  and 9, I have given Ms. Puglisi a copy, and these documents

19  will show that the cedula number, the date of birth, the place

20  of birth, and the picture of Mr. Hurtado match that of the

21  extradition warrant; therefore, we have the right person before

22  the Court.

23          THE COURT:  We'll admit those as Exhibits 8 and 9.

24          If I understand you correctly, Exhibits 1 through 7

25  are already within the court file?

1          MR. WHITE:  They are, Your Honor, the originals with

2   ribbons and seals and that sort of thing that Ms. Puglisi and I

3   reviewed early on in the case in your chambers.  I just have

4   these here for the convenience of the parties.

5          THE COURT:  Okay.  So those Exhibits 1 through 7 I'll

6   allow the Government to maintain custody of because you already

7   have duplicates of those in the official record.

8          Exhibits 8 and 9, if you could hand those to the clerk

9   of the court so she can make them part of the record.

10          MR. WHITE:  Your Honor, just so there's a reference,

11   as I say, in further proceedings.  As to the first point

12   because, obviously, has been challenged in the case law, so I

13   just want to go over them.

14          The authority to conduct an extradition proceeding by

15   this Court is found in 8 USC, Section 3184, and more

16   importantly, in Local Magistrate Rule of the Southern District

17   of Florida, Local Magistrate Rule 3.  The jurisdiction over the

18   person sought to be extradited, I have just gone over his

19   identity, and it has been established.

20          The treaty, the applicable treaty is in full force and

21   effect.  This is shown both by 18 USC, 3181 and the declaration

22   of Heather K. McShain, M-c-S-h-a-i-n, found on the second page

23   of Exhibit 7.

24          As far as dual criminality --

25          THE COURT:  When you say the second page of Exhibit 7,

1  what is Exhibit 7?  Where would we find that on the docket?  Do

2  you know?

3         MR. WHITE:  That's GX 2.  If I can hand this up, Your

4  Honor.  It's right at the front of the exhibit.

5         THE COURT:  This is GX 2 in the docket?

6         MR. WHITE:  Correct, Your Honor.  That is GX 2 in our

7  original filing.  It's the same volume number, but I put an

8  exhibit sticker on it for purposes of this hearing.

9         THE COURT:  Well, why don't we, instead of using these

10  new exhibit stickers, actually refer to these under their

11  originals because we're going to rely on what's in the docket.

12         MR. WHITE:  Thank you, Your Honor.

13         THE COURT:  So this GX 2 is in the copy of this that

14  appears in the docket?

15         MR. WHITE:  Yes, Your Honor.

16         THE COURT:  Okay.  So we'll call that GX 2.

17         And it's on the cover here?

18         MR. WHITE:  It's right at the beginning.

19         THE COURT:  I have it.

20         MR. WHITE:  As far as dual criminality, the crimes for

21  which surrender is requested are covered by this treaty, and

22  that's shown by referring to the first volume that we have

23  introduced.

24         THE COURT:  Which is what?  Show me that.  GX what?

25         MR. WHITE:  That would be GX-3.  It's noted as Volume

1 as well.  Beginning at page 37.

THE COURT:  All right.

MR. WHITE:  Murder is a violation of Section 152 of the Peruvian Criminal Code of 1924, which was in effect at the time of these crimes.  Equivalent United States laws are Florida Statute 782.04, murder; and in the federal realm, 18 United States Code, Section 1111, also dealing with murder.

Abduction is a crime punishable pursuant to Section 223 of the Peruvian Criminal Code of 1924.  And forced abduction is a violation of Section 320 of the Peruvian Criminal Code of 1993.  Equivalent United States laws are Florida Statute 787.01, kidnapping, at 18 United States Code, Section 1201 again, kidnapping.

I know that the question arises in everyone's mind about the Peruvian Criminal Code of 1993 since these acts occurred before that.  It is the position of Peru and the position of the United States Government that since this is a continuing crime as to the abduction of the guide, his body has never been found, and so we don't know if it's murder, but we know it was forced abduction at the time.  That's the basis of the request from Peru.

Finally, in probable cause, there is sufficient evidence to support a finding of probable cause that Hurtado committed each offense.

THE COURT:  What about the third charge, forced

1   disappearance?

2          MR. WHITE:  Well, forced disappearance, Your Honor, we

3   say is equivalent again to kidnapping.

4          THE COURT:  You said it was equivalent to murder.

5          MR. WHITE:  Well, I did.  I said it was equivalent to

6   both.  If you look at the top of that page in my brief, it says

7   kidnapping, and then as I go down I say murder, because it

8   seems to me the facts support that Hurtado shot the guide.  The

9   guide fell into a gully and was never seen again.  I certainly

10  would charge murder as a prosecutor.

11         But as I say, the equivalent crime as it stands with

12  Peru is either kidnapping or murder.  And as the Court knows,

13  it does not have to be the exact equivalent of the foreign

14  crime.

15         Your Honor, finally as to probable cause.  There is

16  sufficient evidence to support a finding of probable cause that

17  each offense was committed.

18         Throughout the formal request for extradition

19  beginning in relevant part on page 12 --

20         THE COURT:  Page 12 of what?

21         MR. WHITE:  Page 12 of GX-3.  Most of the things that

22  Ms. Puglisi and I will be referring to are in Volume 1 or GX 3,

23  Your Honor.

24         THE COURT:  Okay.

25         MR. WHITE:  Beginning in relevant part on page 12:

1    Hurtado's actions are discussed again and again.  The

2    conclusion of the Supreme Court of Justice, Criminal Division,

3    regarding the murder of 69 human beings is found beginning on

4    page 238 of that exhibit, listing the names of the 62 villagers

5    murdered on August 14, 1985.

6           THE COURT:  Can I interrupt you?  Can you hand me up

7    that volume that you're referring to, please?

8           Page 238, you said?

9           MR. WHITE:  238, Your Honor.

10          THE COURT:  Okay.  Page 239 is where they --

11          MR. WHITE:  Beginning on -- that's the discussion.

12   Beginning in that area they list actually the names of the 62

13   villagers.

14          THE COURT:  I got it.

15          MR. WHITE:  As the record shows, Mr. Hurtado admitted

16   to 25 deaths.  The military communicat of Lima, Peru, listed

17   40.  But the later investigation revealed 62 with names at that

18   time.  This was the August 14, 1985 patrol.

19          Now, Mr. Hurtado's actions on September 13, 1985 in

20   murdering six additional human beings who were probable

21   witnesses to the August 14th killings is found on page -- I'm

22   sorry, that would be seven -- found on page 81 of that exhibit.

23          This is the culmination of the investigation by the

24   Commission and various military tribunals and so forth that

25   finally was incorporated in the Supreme Court's decision and

1  warrant.

2          THE COURT:  I'm sorry.  Give me the page number again

3  with the seven folks.

4          MR. WHITE:  81.  And Mr. Hurtado admits his actions in

5  a statement beginning on page 324 of that exhibit, although as

6  I stated, it does not accurately acknowledge the number of

7  victims.

8          Finally, the forced abduction of the guide is

9  described on page 22 of that exhibit.

10          THE COURT:  The guide, is that separate from --

11          MR. WHITE:  That's the forced abduction.

12          THE COURT:  What page is that?

13          MR. WHITE:  That's page 22.

14          With counsel's permission, I will just mark this

15  summary of argument as an exhibit and leave it with the Court.

16          MS. PUGLISI:  No objection, Judge.

17          THE COURT:  Okay.  Let's just go back to a little

18  housekeeping here.  What are the numbers on the old GX numbers

19  on these files here?  I have GX 3.  I actually have GX 3 and GX

20  2.  Can you read the other GX numbers that are on the files

21  here that you're relying on today?

22          MR. WHITE:  I can, Your Honor.  What is Volume 2 is GX

23  4.  Volume 3 is GX 5.  Volume 4 is GX 6.  Volume 5 is GX 7.

24  The diplomatic note, GX 1.  I think you have the other.

25          THE COURT:  GX 2 is --

```
 1              MR. WHITE:  Is another diplomatic note, I believe.

 2              THE COURT:  Right.  The letter that's signed by

 3   Heather McShain on December 7, 2007, with attachments.  And GX

 4   3 is Volume 1, translation of pages 1 through 483 corresponding

 5   to pages 0 to 183 of the original.

 6              So we're going to refer to these -- rather than the

 7   yellow stickers that are on there, we're going to use the

 8   original numbers so that it's less confusing.

 9              MR. WHITE:  Yes, Your Honor.

10              THE COURT:  We have the seven there, right, and then

11   we used 8 and 9 for the two identity documents?

12              MR. WHITE:  Yes, Your Honor.

13              THE COURT:  So we'll make your summary 10.

14              MR. WHITE:  Yes.

15              THE COURT:  So the summary will be marked Government's

16   Exhibit 10, GX-10.

17              Well, 8, 9 and 10 are new exhibits.  No. 20 is

18   Government's summary, you can call it.

19              MR. WHITE:  Your Honor, that completes my summary.

20              If there are no questions, I will yield to counsel.

21              THE COURT:  Okay.  Let's hear what Mr. Hurtado says

22   and then I may have some questions for you.

23              MS. PUGLISI:  The first argument, Judge, I'll address

24   the probable cause with respect to seven of the alleged murder

25   victims.  This is specifically with respect to the date of
```

1  September 13th, 1985.  The facts surrounding this are that

2  Mr. Hurtado with others went back to the area to get rid of any

3  additional witnesses that might be present.  Where I think

4  probable cause is lacking in this portion.

5         THE COURT:  Is the charge on this murder or abduction

6  or both?

7         MS. PUGLISI:  It's murder, Judge.

8         THE COURT:  Murder?

9         MS. PUGLISI:  Yes.  If I can refer to Volume 1 --

10        THE COURT:  Volume 1 is GX 3.  I have it up here.

11        MS. PUGLISI:  Right.  So, Judge, if you refer to GX 3,

12 pages 100 to 102, specifically going to page -- that kind of

13 section -- but if you specifically look to page 101 it, starts

14 Section B, and it talks about the defendant, Telmo Ricardo

15 Hurtado-Hurtado, is accused of the alleged perpetration.  This

16 is of the other seven individuals.  And what it does is it

17 speaks to the alleged actions that took place, and it says at

18 the end his criminal behavior was observed by Floriano De La

19 Cruz.

20        Judge, I was unable to find any witness statement in

21 all of the evidence that was presented by the Government of a

22 specific witness with this name.

23        THE COURT:  Okay.

24        MS. PUGLISI:  What I see here is just a summary or a

25 description of it, but I don't believe that that's sufficient

1  to find probable cause.  Whereas, if you look to the other 62

2  victims, Mr. Hurtado have witness statements that he actually

3  admitted to that, not to that exact number, but you also can go

4  to other portions of the record where they exhumed bodies and

5  they have specifically the names of each person and they were

6  able to identify each of those people, and they had more than

7  one witness as well as Mr. Hurtado's statements.

8         So I believe, Judge, with respect to just these seven

9  individuals, there is insufficient evidence for the Government

10 to have met probable cause.

11        Now, the next argument would be with respect to dual

12 criminality, specifically with respect to the guide, the forced

13 disappearance/abduction of the guide.  And I'm specifically

14 talking about the charge of forced disappearance.  Now, there's

15 no argument that there is no actual charge or crime in the

16 United States of forced disappearance.  The Government spoke to

17 the fact that it could have been murder.  However, if that was

18 what Peru wanted to charge him with, they could have charged

19 him with murder, as we already know they did in these other

20 individuals.

21        So the other thing I think is important to look to,

22 Judge, and I'll refer to GX-3.  This is going to be pages 569

23 and 570.

24        THE COURT:  569?

25        MS. PUGLISI:  Yes.  Is that in Volume 1?  That might

1    not be in --

2          THE COURT:  No.  You are referring to GX 4.

3          MS. PUGLISI:  I'm sorry.  I didn't write down which

4    volume that was.

5          THE COURT:  It will probably be GX 4, because GX 3

6    goes to page 470 or 480-something.

7          So you're referring to GX 4, correct?

8          MS. PUGLISI:  Yes, GX 4, pages 569 and 570.

9          THE COURT:  Yes.

10          MS. PUGLISI:  If you look to paragraph 115, going down

11    to the end, it says, for example, during the investigation he

12    maintained, and this is referring to a statement given by

13    Mr. Hurtado, he mentioned that he shot the aforementioned

14    person, and they're specifically discussing the guide,

15    Philomeno Chacon Ticse, T-i-c-s-e, when he attempted to flee.

16          And if you look at the last portion of that paragraph,

17    a statement specifically from Mr. Hurtado was he was shot

18    because he refused to stop, but I cannot be sure if he was

19    injured or not because he jumped into a gully never to be seen

20    again.

21          I think by these facts that this individual, it was a

22    direct order by an officer and he disregarded it.  He was shot.

23    There is no facts that we know of that he was murdered.  He

24    jumped into the gully.  We don't know what happened to him.  I

25    don't think that there is sufficient crime in the United States

16

1   that would be comparable to this charge of forced

2   disappearance.

3           THE COURT:  Okay.

4           MS. PUGLISI:  Now, Judge, with respect to all of the

5   charges --

6           THE COURT:  Let me just interrupt so I understand.

7   The abduction and the forced disappearance counts, that's only

8   on this guide?

9           MS. PUGLISI:  Yes.

10          THE COURT:  Go ahead.  And everybody else is a murder

11  count, correct?

12          MS. PUGLISI:  Correct.

13          THE COURT:  Okay.

14          MS. PUGLISI:  With respect to all of the charges,

15  Judge, we believe that the Government is unable to satisfy the

16  dual criminality argument by the simple fact that there is no

17  question that Mr. Hurtado was in the military at this time.

18  This was a war zone.  It was a war against the Shining Path, a

19  gorilla organization, a terrorist organization.  He was ordered

20  by superiors to go to this area, and he was actually told the

21  objective of military operations was to capture and/or destroy

22  the existing terrorist elements in Accomarca.  And I'm

23  referring to GS 4, page 556.

24          Judge, during this time we know that he was doing his

25  duty, not whether he went beyond that duty or not.  The charge

1  or the facts underlying it have to do with murder while in the

2  line of duty.  And there is no comparable charge here in

3  Federal Court in the United States other than a military court

4  that has to do with murder while in the line of duty.

5         Now, we see all the time our soldiers over in other

6  countries.  If they commit crimes while, let's say, for

7  example, a rape were to occur of a woman while they're on their

8  duty, that goes to a military court because it happened -- or

9  let's say, for example, a terrorist attack the United States

10  and soldiers were combatting them and went -- somebody maybe

11  surrendered and they went beyond and went ahead and shot those

12  people even though they tried to surrender.  If that was beyond

13  their duty, then they would still be tried in military court

14  and there would be a specific charge.  It would not be murder

15  as what we normally know it.  It would actually be something

16  that has to do with going beyond your duty.

17         And, Judge, this kind of ties in to with respect to

18  the fact that if there are no comparable charges, if the charge

19  be a charge issued by a military court, well, this kind of then

20  falls into the argument of the double jeopardy, which, as you

21  know, I did file a motion to dismiss and I'm just preserving

22  that at this time.  But we know that Mr. Hurtado was tried and

23  acquitted and convicted of some lesser charges in a military

24  court.

25         And just to lay the background to make sure it's

1  understood is that when this first occurred, military court and

2  the civilian court in Peru actually fought for jurisdiction.

3  They both wanted to try the case.  It went to the Supreme Court

4  in Peru.  And they decided that, no, these actions took place

5  while in a war area, and so, no, the military court should have

6  jurisdiction of this.

7       And so because of that, Mr. Hurtado for many years he

8  was convicted of some lesser charges.  He appealed it.  He was

9  then convicted again and he was sentenced to six years to which

10  he served his sentence.

11       And I just want to clarify because it is a little bit

12  -- and I know that Mr. White did correct this, but in his

13  original complaint and memorandum, it does say that he did not

14  complete his sentence.  That is not true.

15       Before the amnesty came in in 1985, he had already

16  completed his sentence.  He completed the interior

17  incarceration point, and he was now outside doing, I don't know

18  what they call it there, like a parole, he was doing that when

19  the amnesty came.  So he had essentially served his entire

20  sentence and the amnesty did not affect him in any way

21  whatsoever.

22       So now for Peru to somehow be upset about what

23  happened and now they want to change it and fight it just seems

24  very political.  And I'm going to move that into my next

25  argument which is the sense of injustice that this case

1  creates.  And I am going to stem this argument based on -- and

2  if I can pass these cases forward to the Court.

3       THE COURT:  Sure.

4       MS. PUGLISI:  The first case, Judge, is Galina vs.

5  Fraser, F-r-a-s-e-r, 278 F.2d 77.  It's a 1960 2nd Circuit

6  case.  Now, it's in dicta actually that this case makes its

7  decision.  But what it says is that even though this was not --

8  the facts in this case were not one that the case fell this

9  way.  They said that we can imagine, and I'm looking to the

10  last page, page 3, which is cited, I guess it's 79 in the case.

11       We can imagine situations where the realtor upon

12  extradition would be subject to procedures or punishment so

13  anti-pathetic to a Federal Court's sense of decency as to

14  require re-examination of the principle set out above.

15       In United States vs. Fernandez vs. Morris, this is a

16  Southern District case, it's 99 F.Supp 2nd 1358.  It was one in

17  which Judge Garber actually denied extradition.  Now, he denied

18  it on the basis of the fact that he didn't believe the

19  Government had satisfied the probable cause requirement.

20       But he does give discussion regarding the holding from

21  Galina, and if you look to page 16 in this case, Section D, he

22  talks about how the complete lack of due process accorded to

23  these defendants shocks the conscience and is anti-pathetic to

24  the Court's sense of decency.

25       And he goes on to speak about how there may be times

1   where the Federal Court just should not extradite someone.   And

2   I think that this is one of those times.   This is a case of

3   first impression, though I do not have case law to set out for

4   the Court.   It's a very rare circumstance, I think, where we

5   find ourselves where somebody has actually been tried in the

6   requesting state, and they are coming back and asking for this

7   individual again.

8          And as you know from my motion to dismiss, the treaty

9   did not specifically address that issue.   And I know that was

10  the basis of the Court's finding with respect to why it was not

11  double jeopardy or a violation of non bis in idem.   But we know

12  that Mr. Hurtado was tried and sentenced in this case.   For

13  whatever reason they are asking for him, and I don't believe

14  that the United States should be used as a conduit for Peru to

15  exact their brand of justice.   They think it's okay to ask a

16  man because of the crimes, because of the political climate,

17  and I think we can see that the political climate in Peru has

18  been unstable for the last several decades, if not longer.

19         But we know that ex-President Fugimora [phonetic] was

20  extradited back for crimes.   We know that their current

21  president, Alan Garcia, was not president for a while and now

22  back as president.   So, whatever is going on there, they are

23  trying to use our country to do something very unfair.   Because

24  we don't do that here, we don't try somebody that's already

25  been convicted of a crime.

1            And they may be unhappy about the way the military

2    court did it, but that was their decision.  Their court decided

3    that jurisdiction should be with the military court.  And it's

4    now unfair that Mr. Hurtado has spent many years of his life

5    since 1985 dealing with this issue and he should not be brought

6    back to this country to have to deal with this again.

7            THE COURT:  But isn't the case law clear that we're

8    not to supposed to impose our safeguards on the foreign

9    countries?

10           MS. PUGLISI:  Well, one of the things, and I have a

11   case that I can cite to you.  It's United States -- I'm sorry

12   -- it's In the Matter of Extradition of John Edward Berks,

13   which is 737 F.2d 1477.  It's a 7th Circuit case.  And it has

14   to do with habeas corpus review.  So we're not quite there

15   yet, but I think that it could be applicable in that it says

16   Federal Courts undertaking habeas corpus review of extradition

17   have the authority to consider not only procedural defects in

18   extradition procedures that are of constitutional dimension,

19   but also the substantive conduct of the United States in

20   undertaking its position to extradite if its conduct violates

21   constitutional rights.

22           So I think that if in habeas corpus review of an

23   extradition we can bring up a constitutional violation, we

24   should be able to bring it up here at this point in the

25   proceeding.

1        Judge, obviously, there's a Fifth Amendment

2  constitutional right to be free from double jeopardy.  Every

3  country in the world believes in this principle in some way or

4  another.  And they call it non bis in idem, we call it double

5  jeopardy here.  But every country believes in this principle.

6        So it's not we just that we shouldn't look to that

7  because that's what our country believes in.  We know that

8  other countries do, too.  And I think that Peru is just using

9  this as an excuse.

10        So while other courts, and there are many other

11  courts, Judge, that have cited to this Galina dicta.  They all

12  have found that those particular circumstances do not rise to

13  that and they don't need to address it.  I think that because

14  this is a case of first impression, it's one we've never heard

15  of.  I think this is one of those circumstances.

16        The Court has finally heard a case where a Federal

17  Court should be outraged by what is going on and we should not

18  allow it to occur.

19        THE COURT:  Okay.  Does the Government have any

20  response?

21        MR. WHITE:  Yes, Your Honor.

22        Your Honor, I'm not going to belabor the double

23  jeopardy argument because we have filed a supplement to our

24  complaint showing that all the prior proceedings in Peru have

25  been set aside.  And the Court has ruled as the law of this

1    case that double jeopardy does not apply and that the rule of

2    non-inquiry should not be violated.  Unless the Court has any

3    questions on that aspect.

4            THE COURT:  I have a question on the no probable

5    cause.  And I didn't write down the page number, but,

6    essentially --

7            MR. WHITE:  You have my notes, Your Honor.

8            THE COURT:  You can help me where you were talking

9    about the criminal -- basically, it just cites, I think,

10   Florenco, Floriano.

11           MS. PUGLISI:  Page 102 in Volume 1.

12           MR. WHITE:  Well, Your Honor, in the war of

13   extradition the Court may rely on hearsay.  And that is the

14   hearsay that he committed these crimes, and I think the cite

15   that I gave you shows an investigating commission came back to

16   the area where these seven people were murdered to cover up the

17   prior murders.  I think there's a discussion there, and I think

18   they're named, the seven victims.

19           THE COURT:  Okay.

20           MR. WHITE:  Your Honor, just to put things in

21   perspective, let's go back and review just very quickly what

22   happened here.  This was a military patrol set out that

23   massacred a two-year-old child, pregnant women, they were

24   raped, they were burned, they were subjected to hand grenades

25   and shots.  As I said, this is a two-year-old child is a

1   terrorist?  Yes, there should be some shock on the part of the

2   Court, but it shouldn't be a shock that Peru is extraditing the

3   wrong person.  I'm shocked at the conduct of an officer who

4   violated the oath of any officer in any country.

5        Ms. Puglisi makes a very good point.  She says, well,

6   the Fifth Amendment is recognized by all countries.  Yes, it's

7   recognized by Peru.  And that's a matter that his defense

8   attorney can raise in Peru if there's any validity to it.

9        The other thing that I think is incorrect is her

10  statement that we cannot prosecute American servicemen, or

11  civilian courts can't prosecute them.  Oh, yes, they can.  We

12  have status of forces agreements around the world.  But -- not

13  frequently, but sometimes we do turn over American military

14  servicemen, especially in rape cases, to local authorities for

15  prosecution.  We did it in Okinawa recently.  We have done it

16  in Japan.  We'll do it again.  But that's neither here nor

17  there.

18        THE COURT:  That's outside of their duties.  Here we

19  have a person who was acting as an officer when he committed

20  the act that is being described.  The Okinawa thing don't --

21        MR. WHITE:  That's the Nuremberg defense, Your Honor,

22  and that's something --

23        THE COURT:  Let me finish, please.

24        MR. WHITE:  Yes.

25        THE COURT:  I believe the Okinawa rape was of a local

1    Okinawan woman.  It didn't have anything to do with the soldier

2    being in battle or pursuing orders that had been given to him

3    by his superior.

4            MR. WHITE:  Right.  And as you see in the record, he

5    was asked:  Did you know that the general command did not allow

6    things like this?  And he said:  No, I never heard that.

7            So this was not an order given by his superiors.  If

8    you look at the record, the Supreme Court finds, he says I

9    never knew what the policy was as a lieutenant.  But there was

10   a policy against this.  Obviously, there's a policy.  This was

11   a massacre.

12           Your Honor, looking at the dual criminality, if you

13   would look carefully at the Florida statutes which we can rely

14   on, the term kidnapping under 787.01(1)(a) means forcibly or by

15   threat confining or abducting a person against their will.

16   There's your abduction.

17           But, Your Honor, and then if you would look at murder,

18   in the murder statute, it's certainly, and I've said that it

19   could have been second, first or second degree murder.  But,

20   again, where someone undertakes to commit a felony which would

21   be some sort of a kidnapping which is named in Section 111 of

22   Title 18, Section A says murder is the unlawful killing of a

23   human being with malice and aforethought.  Every murder

24   perpetrated by a deliberate, malicious or a premeditated

25   killing or in attempt to kidnap.  The word kidnapping is again

 1   used here.  So that's the felony murder rule.

 2          So you take it as the Court wishes.  It's either a

 3   kidnapping or murder or both as far as the dual criminality,

 4   and this is recognized in Peru and in America.  I don't know

 5   about other countries.

 6          Your Honor, if you don't have any other questions, I

 7   have no other comments.

 8          THE COURT:  No, I don't have any other questions.

 9          Anything else, Ms. Puglisi?

10          MS. PUGLISI:  No, Your Honor.

11          THE COURT:  I appreciate your time.

12          MS. PUGLISI:  I put exhibits on what I referred to.

13   Do you want me to introduce those so it would be easier to find

14   them?

15          THE COURT:  Yes, that would be great.  Read them into

16   the record so that we have them.

17          MS. PUGLISI:  Defendant's Exhibit A is pages 100 to

18   102 from GX 3.

19          THE COURT:  Right.

20          MS. PUGLISI:  And then Exhibit, Defendant's Exhibit B

21   is pages 569 and 570 from GX 4.

22          THE COURT:  Okay.

23          THE COURT:  And if you could hand them up to me, that

24   would be helpful.  I will staple them together.

25          Anything else?

```
 1              MS. PUGLISI:  No, Judge.

 2              MR. WHITE:  No.

 3              THE COURT:  Thanks for your time and help.  I will get

 4   something out.  If I decide that I need any further briefing, I

 5   will issue and order or my clerk will contact the two of you

 6   and let you know.  Okay?

 7              MS. PUGLISI:  Thank you.

 8              THE COURT:  Thanks a lot.  You all have a good day.

 9                   [Court adjourned at 3:30 p.m.]

10                   C E R T I F I C A T E

11         I hereby certify that the foregoing is an accurate

12   transcription of proceedings in the above-entitled matter.

13

                        s/Larry Herr

14   _____    _____

          DATE             LARRY HERR, RPR-CM-RMR-FCRSC

15                         Official United States Court Reporter

                           400 N. Miami Avenue

16                         Miami, FL  33128 - 305/523-5290

                                     (Fax) 305/523-5639

17                         email:  Lindsay165@aol.com

18

19

20

21

22

23

24

25
```

## A

abducting 25:15
abduction 8:8,10,18
  8:20 11:8,11 13:5
  16:7 25:16
able 14:6 21:24
about 8:15,25 13:14
  14:14 18:22 19:22
  19:25 21:1 23:9
  26:5
above 19:14
above-entitled 27:12
Accomarca 16:22
accompanied 3:6
accorded 19:22
accurate 27:11
accurately 11:6
accused 13:15
acknowledge 11:6
acquitted 17:23
act 24:20
acting 24:19
actions 10:1,19 11:4
  13:17 18:4
acts 8:15
actual 14:15
actually 7:10 10:12
  11:19 14:2 16:20
  17:15 18:2 19:6,17
  20:5
additional 10:20
  13:3
address 12:23 20:9
  22:13
adjourned 27:9
admit 5:23
admits 11:4
admitted 10:15 14:3
affect 18:20
aforementioned
  15:13
aforethought 25:23
afternoon 3:5,11
again 8:13 9:3,9 10:1
  10:1 11:2 15:20
  18:9 20:7 21:6
  24:16 25:20,25
against 16:18 25:10
  25:15
Agent 3:6
agreements 24:12
ahead 16:10 17:11
aid 3:13
Alan 20:21
alleged 12:24 13:15
  13:17
allow 6:6 22:18 25:5
already 5:25 6:6
  14:19 18:15 20:24
although 11:5
Amendment 22:1
  24:6
America 1:4 26:4
American 24:10,13

## B

B 13:14 26:20
back 3:16 11:17 13:2
  20:6,20,22 21:6
  23:15,21
background 17:25
based 19:1
basically 23:9
basis 8:20 19:18
  20:10
battle 25:2
before 1:11 5:21
  8:16 18:15
beginning 3:16 7:18
  8:1 9:19,25 10:3
  10:11,12 11:5
behalf 3:12
behavior 13:18
being 24:20 25:2,23
beings 10:3,20
belabor 22:22
believe 12:1 13:25

amnesty 18:15,19,20
and/or 16:21
another 12:1 22:4
anti-pathetic 19:13
  19:23
anything 25:1 26:9
  26:25
appeal 5:5
appealed 18:8
appearances 1:12
  3:4
appears 7:14
applicable 4:12,17
  6:20 21:15
application 5:17
apply 23:1
appreciate 26:11
area 10:12 13:2
  16:20 18:5 23:16
argument 11:15
  12:23 14:11,15
  16:16 17:20 18:25
  19:1 22:23
arises 8:14
around 24:12
aside 22:25
asked 25:5
asking 20:6,13
aspect 23:3
Assistant 1:13,16
  3:12
attachments 12:3
attack 17:9
attempt 25:25
attempted 15:15
attorney 1:13 24:8
August 10:5,18,21
authorities 24:14
authority 6:14 21:17
authorized 4:6
Avenue 1:20 27:15

## B

B 13:14 26:20

14:8 16:15 19:18
  20:13 24:25
believes 22:3,5,7
Berks 2:8 21:12
beyond 16:25 17:11
  17:12,16
birth 5:19,20
bis 20:11 22:4
bit 18:11
bodies 14:4
body 8:18
both 6:21 9:6 13:6
  18:3 26:3
brand 20:15
brief 3:16 9:6
briefing 27:4
briefly 5:6
bring 21:23,24
brought 21:5
burned 23:24

## C

C 1:13 27:10,10
call 7:16 12:18 18:18
  22:4,4
called 3:17
came 18:15,19 23:15
capture 16:21
carefully 25:13
case 1:3 3:1,3,16 6:3
  6:12 18:3,25 19:4
  19:6,6,8,8,10,16
  19:21 20:2,3,12
  21:7,11,13 22:14
  22:16 23:1
cases 19:2 24:14
cause 4:22 8:22,23
  9:15,16 12:24 13:4
  14:1,10 19:19 23:5
cedula 5:19
certainly 9:9 25:18
Certificate 2:3
certification 3:18,23
Certified 1:19
certify 27:11
Chacon 15:15
challenged 6:12
chambers 6:3
change 18:23
charge 4:22 8:25
  9:10 13:5 14:14,15
  14:18 16:1,25 17:2
  17:14,18,19
charged 14:18
charges 4:25 16:5,14
  17:18,23 18:8
child 23:23,25
Circuit 3:19,21 19:5
  21:13
circumstance 20:4
circumstances 22:12
  22:15
CITATIONS 2:4
cite 3:21 21:11 23:14

cited 19:10 22:11
cites 23:9
civilian 18:2 24:11
clarify 18:11
clear 5:4 21:7
clerk 6:8 27:5
climate 20:16,17
Code 8:4,7,9,11,12
  8:15
combatting 17:10
coming 20:6
command 25:5
comments 26:7
commission 10:24
  23:15
commit 17:6 25:20
committed 8:24 9:17
  23:14 24:19
communicat 10:16
comparable 16:1
  17:2,18
complaint 5:13
  18:13 22:24
complete 18:14
  19:22
completed 18:16,16
completes 12:19
conclusion 10:2
conduct 4:6 6:14
  21:19,20 24:3
conduit 20:14
confining 25:15
confusing 12:8
conscience 19:23
consider 21:17
constitutional 21:18
  21:21,23 22:2
contact 27:5
CONTENTS 2:1
contest 4:19,24
contesting 4:3
continuing 8:18
convenience 6:4
convicted 17:23 18:8
  18:9 20:25
copy 5:18 7:13
corpus 5:5 21:14,16
  21:22
correct 7:6 15:7
  16:11,12 18:12
correctly 5:24
corresponding 12:4
counsel 3:24 12:20
counsel's 11:14
count 16:11
countries 17:6 21:9
  22:8 24:6 26:5
country 20:23 21:6
  22:3,5,7 24:4
counts 16:7
court 1:1,19 2:6 3:1
  3:8,10,14,20,22
  4:5,9,9,12,16,20
  5:1,8,11,12,22,23

5:25 6:5,9,15,25
  7:5,9,13,16,19,24
  8:2,25 9:4,12,20
  9:24 10:2,6,10,14
  11:2,10,12,15,17
  11:25 12:2,10,13
  12:15,21 13:5,8,10
  13:23 14:24 15:2,5
  15:9 16:3,6,10,13
  17:3,3,8,13,19,24
  18:1,2,3,5 19:2,3
  20:1,4 21:2,2,3,7
  22:16,17,19,25
  23:2,4,8,13,19
  24:2,18,23,25 25:8
  26:2,8,11,15,19,22
  26:23 27:3,8,9,15
courts 21:16 22:10
  22:11 24:11
Court's 10:25 19:13
  19:24 20:10
cover 7:17 23:16
covered 4:17 7:21
creates 19:1
crime 4:16 8:8,18
  9:11,14 14:15
  15:25 20:25
crimes 4:16 7:20 8:5
  17:6 20:16,20
  23:14
criminal 8:4,9,11,15
  10:2 13:18 23:9
criminality 6:24
  7:20 14:12 16:16
  25:12 26:3
Cruz 13:19
culmination 10:23
current 20:20
custody 6:6

## D

D 1:16 19:21
date 5:19 12:25
  27:14
day 27:8
De 13:18
deal 21:6
dealing 8:7 21:5
deaths 10:16
decades 20:18
December 12:3
decency 19:13,24
decide 27:4
decided 18:4 21:2
decision 10:25 19:7
  21:2
declaration 6:21
defects 21:17
defendant 1:8,16
  13:14
defendants 19:23
Defendant's 26:17
  26:20
Defender 1:16 3:12

**defense** 24:7,21
**degree** 25:19
**deliberate** 25:24
**denied** 19:17,17
**described** 11:9 24:20
**description** 13:25
**destroy** 16:21
**dicta** 19:6 22:11
**dimension** 21:18
**diplomatic** 11:24
   12:1
**direct** 15:22
**disappearance** 9:1,2
   14:14,16 16:2,7
**disappearance/ab...**
   14:13
**discussed** 10:1
**discussing** 15:14
**discussion** 10:11
   19:20 23:17
**dismiss** 17:21 20:8
**disregarded** 15:22
**District** 1:1,1 6:16
   19:16
**Division** 1:2 10:2
**docket** 7:1,5,11,14
**documents** 5:17,18
   12:11
**doing** 16:24 18:17
   18:18
**done** 24:15
**double** 17:20 20:11
   22:2,4,22 23:1
**down** 9:7 15:3,10
   23:5
**dual** 6:24 7:20 14:11
   16:16 25:12 26:3
**due** 19:22
**duplicates** 6:7
**during** 15:11 16:24
**duties** 24:18
**duty** 16:25,25 17:2,4
   17:8,13,16

**E**

**E** 27:10,10
**each** 4:1,22 8:24
   9:17 14:5,6
**early** 6:3
**easier** 26:13
**Edward** 2:8 21:12
**effect** 4:13 6:21 8:4
**either** 9:12 26:2
**element** 4:3
**elements** 3:19 4:1
   5:6 16:22
**email** 27:17
**end** 13:18 15:11
**entire** 18:19
**equivalent** 8:5,11
   9:3,4,5,11,13
**especially** 24:14
**ESQ** 1:13,16
**essentially** 18:19

23:6
**established** 6:19
**even** 5:6 17:12 19:7
**event** 5:4
**every** 22:2,5 25:23
**everybody** 16:10
**everyone's** 8:14
**evidence** 4:21 8:23
   9:16 13:21 14:9
**exact** 9:13 14:3
   20:15
**example** 15:11 17:7
   17:9
**except** 5:14
**excuse** 22:9
**exhibit** 6:23,25 7:1,4
   7:8,10 10:4,22
   11:5,9,15 12:16
   26:17,20,20
**exhibits** 5:10,11,13
   5:14,17,23,24 6:5
   6:8 12:17 26:12
**exhumed** 14:4
**existing** 16:22
**extradite** 20:1 21:20
**extradited** 6:18
   20:20
**extraditing** 24:2
**extradition** 1:10 2:8
   3:2,15,22 4:6,22
   5:13,21 6:14 9:18
   19:12,17 21:12,16
   21:18,23 23:13
**ex-President** 20:19

**F**

**F** 27:10
**fact** 14:17 16:16
   17:18 19:18
**facts** 9:8 13:1 15:21
   15:23 17:1 19:8
**falls** 17:20
**far** 6:24 7:20 26:3
**Fax** 27:16
**federal** 1:16 3:12 8:6
   17:3 19:13 20:1
   21:16 22:16
**Federally** 1:19
**fell** 9:9 19:8
**felony** 25:20 26:1
**Fernandez** 2:6,10
   3:19 19:15
**few** 4:25
**fifth** 4:20 22:1 24:6
**fight** 18:23
**file** 5:25 17:21
**filed** 3:16 5:11 22:23
**files** 11:19,20
**filing** 7:7
**final** 4:20
**finally** 8:22 9:15
   10:25 11:8 22:16
**find** 7:1 13:20 14:1
   20:5 26:13

**finding** 4:21 8:23
   9:16 20:10
**finds** 25:8
**finish** 24:23
**first** 3:4 4:5 5:9 6:11
   7:22 12:23 18:1
   19:4 20:3 22:14
   25:19
**five** 3:18
**FL** 1:14,17,20 27:16
**Flagler** 1:17
**flee** 15:15
**Florenco** 23:10
**Floriano** 13:18 23:10
**Florida** 1:1,4 6:17
   8:6,12 25:13
**folks** 11:3
**force** 4:13 6:20
**forced** 8:9,20,25 9:2
   11:8,11 14:12,14
   14:16 16:1,7
**forces** 24:12
**forcibly** 25:14
**foregoing** 27:11
**foreign** 9:13 21:8
**formal** 9:18
**forth** 10:24
**forward** 19:2
**fought** 18:2
**found** 6:15,22 8:19
   10:3,21,22 22:12
**fourth** 4:16
**Fraser** 2:7 19:5
**free** 22:2
**frequently** 24:13
**from** 5:1,5 8:21
   11:10 15:17 19:20
   20:8 22:2 26:18,21
**front** 7:4
**Fugimora** 20:19
**fugitive** 4:10
**full** 4:12 6:20
**further** 6:11 27:4
**F-r-a-s-e-r** 2:7 19:5
**F.Supp** 19:16
**F.2d** 2:7 19:5 21:13
**F.3d** 2:9 3:21

**G**

**Galina** 2:7 19:4,21
   22:11
**Garber** 19:17
**Garcia** 20:21
**gave** 23:15
**general** 25:5
**give** 11:2 19:20
**given** 5:18 15:12
   25:2,7
**go** 4:1 5:6 6:13 9:7
   11:17 14:3 16:10
   16:20 23:21
**goes** 15:6 17:8 19:25
**going** 7:11 12:6,7
   13:12 14:22 15:10

17:16 18:24 19:1
   20:22 22:17,22
**gone** 6:18
**good** 3:5,11 24:5
   27:8
**gorilla** 16:19
**Government** 1:13
   3:4,16,25 5:1 6:6
   8:17 13:21 14:9,16
   16:15 19:19 22:19
**Government's** 4:3
   12:15,18
**great** 26:15
**grenades** 23:24
**GS** 16:23
**guess** 19:10
**guide** 8:18 9:8,9 11:8
   11:10 14:12,13
   15:14 16:8
**gully** 9:9 15:19,24
**GX** 7:3,5,6,13,16,24
   9:22 11:18,19,19
   11:19,20,22,23,23
   11:23,24,25 12:3
   13:10,11 15:2,5,5
   15:7,8 26:18,21
**GX-10** 12:16
**GX-3** 7:25 9:21
   14:22

**H**

**habeas** 5:5 21:14,16
   21:22
**hand** 6:8 7:3 10:6
   23:24 26:23
**happened** 15:24
   17:8 18:23 23:22
**hear** 5:1 12:21
**heard** 22:14,16 25:6
**hearing** 1:10 3:15
   5:10 7:8
**hearsay** 23:13,14
**Heather** 6:22 12:3
**help** 23:8 27:3
**helpful** 26:24
**her** 24:9
**Herr** 1:18 27:13,14
**him** 14:18,19 15:24
   18:20 20:13 25:2
**holding** 19:20
**Honor** 3:5,9 4:4 5:3
   5:9 6:1,10 7:4,6,12
   7:15 9:2,15,23
   10:9 11:22 12:9,12
   12:19 22:21,22
   23:7,12,20 24:21
   25:12,17 26:6,10
**HONORABLE** 1:11
**housekeeping** 11:18
**human** 10:3,20
   25:23
**Hurtado** 1:7 3:10,12
   4:10 5:20 8:23 9:8
   10:15 11:4 12:21

13:2 14:2 15:13,17
   16:17 17:22 18:7
   20:12 21:4
**Hurtado's** 3:24 5:16
   10:1,19 14:7
**Hurtado-Hurtado**
   3:2 13:15

**I**

**ICE** 3:9
**idem** 20:11 22:4
**identify** 14:6
**identity** 5:14 6:19
   12:11
**imagine** 19:9,11
**important** 14:21
**importantly** 6:16
**impose** 21:8
**impression** 20:3
   22:14
**incarceration** 18:17
**include** 5:13
**incorporated** 10:25
**incorrect** 24:9
**individual** 15:21
   20:7
**individuals** 13:16
   14:9,20
**injured** 15:19
**injustice** 18:25
**inquire** 3:24
**instead** 7:9
**insufficient** 14:9
**interior** 18:16
**interpreter** 3:13
**interrupt** 10:16 16:6
**introduce** 5:10 26:13
**introduced** 7:23
**investigating** 23:15
**investigation** 10:17
   10:23 15:11
**issue** 3:22 4:19,24
   5:15 20:9 21:5
   27:5
**issued** 17:19

**J**

**J** 1:11
**Japan** 24:16
**jeopardy** 17:20
   20:11 22:2,5,23
   23:1
**John** 1:11 2:8 21:12
**Judge** 1:11 4:8 11:16
   12:23 13:7,11,20
   14:8,22 16:4,15,24
   17:17 19:4,17 22:1
   22:11 27:1
**judicial** 4:5 5:12
**jumped** 15:19,24
**jurisdiction** 4:10
   6:17 18:2,6 21:3
**just** 5:4 6:3,10,13,18
   11:14,17 13:24

14:8 16:6 17:21,25
18:11,23 20:1 22:6
22:8 23:9,20,21
**justice** 10:2 20:15

**K**
**K** 6:22
**kidnap** 25:25
**kidnapping** 8:12,13
9:3,7,12 25:14,21
25:25 26:3
**killing** 25:22,25
**killings** 10:21
**kind** 13:12 17:17,19
**knew** 25:9
**know** 4:2 7:2 8:14,19
8:20 14:19 15:23
15:24 16:24 17:15
17:21,22 18:12,17
20:8,9,11,19,20
22:7 25:5 26:4
27:6
**knows** 9:12

**L**
**La** 13:18
**lack** 19:22
**lacking** 13:4
**LARRY** 1:18 27:14
**last** 15:16 19:10
20:18
**later** 10:17
**law** 3:17 6:12 20:3
21:7 22:25
**laws** 8:5,11
**lay** 3:18 17:25
**leave** 11:15
**less** 12:8
**lesser** 17:23 18:8
**let** 4:1 5:1 16:6 24:23
27:6
**letter** 12:2
**let's** 11:17 12:21
17:6,9 23:21
**Levy** 2:9 3:21
**lieutenant** 25:9
**life** 21:4
**like** 5:2,6,9 18:18
25:6
**Lima** 10:16
**Lindsay165@aol.c...**
27:17
**line** 17:2,4
**list** 10:12
**listed** 10:16
**listing** 10:4
**little** 11:17 18:11
**local** 6:16,17 24:14
24:25
**longer** 20:18
**look** 9:6 13:13 14:1
14:21 15:10,16
19:21 22:6 25:8,13
25:17

**looking** 19:9 25:12
**lot** 27:8

**M**
**Magistrate** 1:11
6:16,17
**maintain** 6:6
**maintained** 15:12
**make** 6:9 12:13
17:25
**makes** 19:6 24:5
**malice** 25:23
**malicious** 25:24
**man** 20:16
**many** 18:7 21:4
22:10
**mark** 11:14
**marked** 12:15
**massacre** 25:11
**massacred** 23:23
**match** 5:20
**matter** 2:8 3:2 21:12
24:7 27:12
**may** 1:5 12:22 19:25
21:1 23:13
**maybe** 17:10
**McShain** 6:22 12:3
**means** 25:14
**memorandum** 3:17
18:13
**mentioned** 15:13
**met** 14:10
**Miami** 1:2,4,14,17
1:20,20 27:15,16
**might** 13:3 14:25
**military** 10:16,24
16:17,21 17:3,8,13
17:19,23 18:1,5
21:1,3 23:22 24:13
**mind** 8:14
**more** 6:15 14:6
**Morris** 2:10 19:15
**Most** 9:21
**motion** 17:21 20:8
**move** 18:24
**murder** 8:3,6,7,19
9:4,7,10,12 10:3
12:24 13:5,7,8
14:17,19 16:10
17:1,4,14 25:17,18
25:19,22,23 26:1,3
**murdered** 10:5
15:23 23:16
**murdering** 10:20
**murders** 23:17
**M-c-S-h-a-i-n** 6:22

**N**
**N** 27:15
**name** 13:22
**named** 23:18 25:21
**names** 10:4,12,17
14:5
**need** 22:13 27:4

**neither** 24:16
**never** 8:19 9:9 15:19
22:14 25:6,9
**new** 7:10 12:17
**next** 14:11 18:24
**non** 20:11 22:4
**non-inquiry** 23:2
**normally** 17:15
**North** 1:20
**Northeast** 1:14
**note** 11:24 12:1
**noted** 7:25
**notes** 23:7
**notice** 5:12
**number** 5:19 7:7
11:2,6 14:3 23:5
**numbers** 11:18,18
11:20 12:8
**Nuremberg** 24:21

**O**
**oath** 24:4
**objection** 11:16
**objective** 16:21
**observed** 13:18
**obviously** 6:12 22:1
25:10
**occur** 17:7 22:18
**occurred** 8:16 18:1
**offense** 8:24 9:17
**offer** 5:16
**officer** 4:5 15:22
24:3,4,19
**official** 1:19 6:7
27:15
**Oh** 24:11
**okay** 3:8,10 5:8 6:5
7:16 9:24 10:10
11:17 12:21 13:23
16:3,13 20:15
22:19 23:19 26:22
27:6
**Okinawa** 24:15,20
24:25
**Okinawan** 25:1
**old** 11:18
**one** 4:5,9,16,20,20
14:7 19:8,16 20:2
21:10 22:14,15
**only** 4:24 16:7 21:17
**operations** 16:21
**order** 3:22 15:22
25:7 27:5
**ordered** 16:19
**orders** 25:2
**organization** 16:19
16:19
**original** 7:7 12:5,8
18:13
**originals** 6:1 7:11
**other** 5:14 11:20,24
13:16 14:1,4,19,21
17:3,5 22:8,10,10
24:9 26:5,6,7,8

**others** 13:2
**ourselves** 20:5
**out** 3:18 19:14 20:3
23:22 27:4
**outraged** 22:17
**outside** 18:17 24:18
**over** 4:10 5:6 6:13
6:17,18 17:5 24:13
**own** 5:12
**O'SULLIVAN** 1:11

**P**
**page** 2:2,5 6:22,25
8:1 9:6,19,20,21
9:25 10:4,8,10,21
10:22 11:2,5,9,12
11:13 13:12,13
15:6 16:23 19:10
19:10,21 23:5,11
**pages** 12:4,5 13:12
14:22 15:8 26:17
26:21
**paragraph** 15:10,16
**parole** 18:18
**part** 4:24 6:9 9:19,25
24:1
**particular** 4:3 22:12
**parties** 6:4
**pass** 19:2
**passport** 5:16
**Path** 16:18
**patrol** 10:18 23:22
**people** 14:6 17:12
23:16
**permission** 11:14
**perpetrated** 25:24
**perpetration** 13:15
**person** 5:21 6:18
14:5 15:14 24:3,19
25:15
**perspective** 23:21
**Peru** 8:16,21 9:12
10:16 14:18 18:2,4
18:22 20:14,17
22:8,24 24:2,7,8
26:4
**Peruvian** 8:4,9,10,15
**petition** 5:5
**Philomeno** 15:15
**phonetic** 20:19
**picture** 5:20
**place** 5:19 13:17
18:4
**Plaintiff** 1:5
**please** 10:7 24:23
**point** 6:11 18:17
21:24 24:5
**policy** 25:9,10,10
**political** 18:24 20:16
20:17
**portion** 13:4 15:16
**portions** 14:4
**position** 8:16,17
21:20

**Poxa** 2:9 3:21
**pregnant** 23:23
**premeditated** 25:24
**present** 3:13 13:3
**presented** 13:21
**preserving** 17:21
**president** 20:21,21
20:22
**principle** 19:14 22:3
22:5
**prior** 22:24 23:17
**probable** 4:22 8:22
8:23 9:15,16 10:20
12:24 13:4 14:1,10
19:19 23:4
**probably** 15:5
**procedural** 21:17
**procedures** 19:12
21:18
**proceed** 5:2
**proceeding** 4:7 6:14
21:25
**proceedings** 4:14
6:11 22:24 27:12
**process** 19:22
**proof** 4:3
**prosecute** 24:10,11
**prosecution** 24:15
**prosecutor** 9:10
**prove** 3:25
**Puglisi** 3:11,11 4:2,4
4:8,11,15,19,24
5:18 6:2 9:22
11:16 12:23 13:7,9
13:11,24 14:25
15:3,8,10 16:4,9
16:12,14 19:4
21:10 23:11 24:5
26:9,10,12,17,20
27:1,7
**punishable** 8:8
**punishment** 19:12
**purposes** 5:10 7:8
**pursuant** 8:8
**pursuing** 25:2
**put** 7:7 23:20 26:12
**p.m** 27:9

**Q**
**question** 8:14 16:17
23:4
**questions** 12:20,22
23:3 26:6,8
**quickly** 23:21
**quite** 21:14

**R**
**R** 27:10
**raise** 24:8
**rape** 17:7 24:14,25
**raped** 23:24
**rare** 20:4
**rather** 12:6
**read** 11:20 26:15

realm 8:6
Realtime 1:19
realtor 19:11
reason 20:13
recently 24:15
recognized 24:6,7
  26:4
record 5:4 6:7,9
  10:15 14:4 25:4,8
  26:16
records 5:12
refer 7:10 12:6 13:9
  13:11 14:22
reference 6:10
referred 4:13 26:12
referring 7:22 9:22
  10:7 15:2,7,12
  16:23
refused 15:18
regarding 10:3
  19:20
relate 5:14
relevant 9:19,25
rely 7:11 23:13
  25:13
relying 11:21
REPORTED 1:18
Reporter 1:19,19
  27:15
Reporter's 2:3
request 3:18 8:21
  9:18
requested 4:17 7:21
requesting 20:6
require 3:25 19:14
required 3:22
requirement 19:19
respect 12:24,25
  14:8,11,12 16:4,14
  17:17 20:10
response 22:20
revealed 10:17
review 21:14,16,22
  23:21
reviewed 6:3
re-examination
  19:14
ribbons 6:2
Ricardo 1:7 3:2
  13:14
rid 13:2
right 5:21 7:4,18 8:2
  9:2,10 13:11 22:2
  25:4 26:19
rights 21:21
rise 22:12
Room 1:20
RPR-CM-RMR-F...
  27:14
RPR-RMR-FCRR...
  1:18
rule 6:16,17 23:1
  26:1
ruled 22:25

S
Sabrina 1:16 3:11
safeguards 21:8
same 5:11 7:7
satisfied 19:19
satisfy 16:15
says 9:6 12:21 13:17
  15:11 19:7 21:15
  24:5 25:8,22
seals 6:2
seated 3:14
second 4:9 6:22,25
  25:19,19
section 6:15 8:3,7,8
  8:10,13 13:13,14
  19:21 25:21,22
see 13:24 17:5 20:17
  25:4
seems 9:8 18:23
seen 9:9 15:19
sense 18:25 19:13,24
sentence 18:10,14,16
  18:20
sentenced 18:9
  20:12
separate 11:10
September 3:17
  10:19 13:1
served 18:10,19
servicemen 24:10,14
set 19:14 20:3 22:25
  23:22
seven 10:22 11:3
  12:10,24 13:16
  14:8 23:16,18
several 20:15
Shining 16:18
shock 24:1,2
shocked 24:3
shocks 19:23
shot 9:8 15:13,17,22
  17:11
shots 23:25
show 5:19 7:24
showing 22:24
shown 6:21 7:22
shows 10:15 23:15
signed 12:2
simple 16:16
since 8:15,17 21:5
situations 19:11
six 10:20 18:9
soldier 25:1
soldiers 17:5,10
some 12:22 17:23
  18:8 22:3 24:1
  25:21
somebody 17:10
  20:5,24
somehow 18:22
someone 20:1 25:20
something 17:15
  20:23 24:22 27:4
sometimes 24:13

sorry 3:19 10:22
  11:2 15:3 21:11
sort 6:2 25:21
sought 4:23 6:18
Southern 1:1 6:16
  19:16
Spanish 3:13
speak 19:25
speaks 13:17
Special 3:6
specific 13:22 17:14
specifically 12:25
  13:12,13 14:5,12
  14:13 15:14,17
  20:9
spent 21:4
spoke 14:16
stands 9:11
staple 26:24
starts 13:13
state 20:6
stated 11:6
statement 11:5
  13:20 15:12,17
  24:10
statements 14:2,7
States 1:1,4,11,19
  2:6,10 3:6,17,20
  8:5,7,11,12,17
  14:16 15:25 17:3,9
  19:15 20:14 21:11
  21:19 27:15
status 24:12
statute 8:6,12 25:18
statutes 25:13
stem 19:1
sticker 7:8
stickers 7:10 12:7
still 17:13
stipulate 3:25 4:2,7
  4:11,15
stipulated 5:7,15
stop 15:18
Street 1:14,17
subject 19:12
subjected 23:24
substantive 21:19
sufficient 4:21 8:22
  9:16 13:25 15:25
summary 11:15
  12:13,15,18,19
  13:24
superior 25:3
superiors 16:20 25:7
supplement 22:23
support 3:17 4:21
  8:23 9:8,16
supposed 21:8
Supreme 2:6 3:20
  10:2,25 18:3 25:8
sure 15:18 17:25
  19:3
surrender 4:17 7:21
  17:12

surrendered 17:11
surrounding 13:1
s/Larry 27:13

T
T 27:10,10
TABLE 2:1
take 5:12 26:2
talking 14:14 23:8
talks 13:14 19:22
Telmo 1:7 3:2 13:14
term 25:14
terrorist 16:19,22
  17:9 24:1
Thank 3:14 5:3 7:12
  27:7
Thanks 27:3,8
their 3:18 7:10 17:7
  17:13 20:15,20
  21:2,2 24:18 25:15
thing 6:2 14:21 24:9
  24:20
things 9:21 21:10
  23:20 25:6
think 11:24 13:3
  14:21 15:21,25
  20:2,4,15,17 21:15
  21:22 22:8,13,15
  23:9,14,17,17 24:9
third 8:25
though 5:6 17:12
  19:7 20:3
threat 25:15
through 4:1 5:24 6:5
  12:4
throughout 4:14
  9:18
Ticse 15:15
ties 17:17
time 5:16 8:5,20
  10:18 16:17,24
  17:5,22 26:11 27:3
times 19:25 20:2
Title 25:22
today 3:1,15 5:2
  11:21
together 26:24
told 16:20
top 9:6
TRANSCRIPT 1:10
transcription 27:12
translation 12:4
treaty 4:12,13,18
  6:20,20 7:21 20:8
tribunals 10:24
tried 17:12,13,22
  20:5,12
true 18:14
try 18:3 20:24
trying 20:23
turn 24:13
two 5:14,14 12:11
  27:5
two-year-old 23:23

23:25
T-i-c-s-e 15:15

U
unable 13:20 16:15
under 7:10 25:14
underlying 17:1
understand 5:24
  16:6
understood 18:1
undertakes 25:20
undertaking 21:16
  21:20
unfair 20:23 21:4
unhappy 21:1
United 1:1,4,11,19
  2:6,10 3:6,17,20
  8:5,7,11,12,17
  14:16 15:25 17:3,9
  19:15 20:14 21:11
  21:19 27:15
unlawful 25:22
Unless 23:2
unstable 20:18
upset 18:22
USC 6:15,21
use 12:7 20:23
used 21:1 20:14
  26:1
using 3:13 7:9 22:8
U.S 1:13 2:6 3:20

V
validity 24:8
various 10:24
very 18:24 20:4,23
  23:21 24:5
victims 11:7 12:25
  14:2 23:18
Victor 3:6,8
villagers 10:4,13
violated 23:2 24:4
violates 21:20
violation 8:3,10
  20:11 21:23
visa 5:17
volume 7:7,22,25
  9:22 10:7 11:22,23
  11:23,23 12:4 13:9
  13:10 14:25 15:4
  23:11
VORA-PUGLISI
  1:16
vs 1:6 2:7,9,10,10
  3:21 19:4,15,15

W
want 4:2 6:13 18:11
  18:23 26:13
wanted 3:24 14:18
  18:3
war 16:18,18 18:5
  23:12
warrant 5:21 11:1

**way** 18:20 19:9 21:1
  22:3
**well** 3:20 7:9 8:1 9:2
  9:5 12:17 14:7
  17:19 21:10 23:12
  24:5
**went** 13:2 16:25
  17:10,11,11 18:3
**were** 5:7 10:20 14:5
  17:7,10 19:8 23:8
  23:16,23,24,24
**West** 1:17
**we'll** 5:23 7:16 12:13
  24:16
**we're** 3:15 7:11 12:6
  12:7 21:7,14
**we've** 22:14
**whatsoever** 18:21
**while** 17:1,4,6,7 18:5
  20:21 22:10
**White** 1:13 3:5,5,9
  5:3,9 6:1,10 7:3,6
  7:12,15,18,20,25
  8:3 9:2,5,21,25
  10:9,11,15 11:4,11
  11:13,22 12:1,9,12
  12:14,19 18:12
  22:21 23:7,12,20
  24:21,24 25:4 27:2
**William** 1:13 3:5
**Williams** 3:7,8
**wishes** 26:2
**witness** 13:20,22
  14:2,7
**witnesses** 10:21 13:3
**woman** 17:7 25:1
**women** 23:23
**word** 25:25
**world** 22:3 24:12
**writ** 5:5
**write** 15:3 23:5
**wrong** 24:3

---
**X**
**x** 1:9

---
**Y**
**years** 18:7,9 21:4
**yellow** 12:7
**yield** 12:20

---
**Z**
**zone** 16:18

---
**0**
**0** 12:5
**08-MC-22414** 3:3
**08-MC-22414-UN...**
  1:3

---
**1**
**1** 5:24 6:5 8:1 9:22
  11:24 12:4,4 13:9
  13:10 14:25 23:11

**10** 12:13,16,17
**100** 13:12 26:17
**101** 13:13
**102** 13:12 23:11
  26:18
**111** 25:21
**1111** 8:7
**115** 15:10
**12** 9:19,20,21,25
**1201** 8:13
**13** 10:19
**13th** 13:1
**1358** 19:16
**14** 10:5,18
**14th** 10:21
**1477** 21:13
**150** 1:17
**152** 8:3
**16** 19:21
**18** 6:21 8:6,12 25:22
**183** 12:5
**19** 2:7,10
**1924** 8:4,9
**1960** 19:5
**1985** 10:5,18,19 13:1
  18:15 21:5
**1993** 8:11,15

---
**2**
**2** 7:3,5,6,13,16 11:20
  11:22,25
**2nd** 19:5,16
**20** 12:17
**2007** 12:3
**2009** 1:5
**21** 2:8
**22** 11:9,13
**223** 8:9
**238** 10:4,8,9
**239** 10:10
**25** 10:16
**268** 2:6 3:20
**27** 2:3
**278** 2:7 19:5

---
**3**
**3** 2:6,9 6:17 9:22
  11:19,19,23 12:4
  13:10,11 15:5
  19:10 26:18
**3rd** 3:19,21
**3:30** 27:9
**305.523.5290** 1:20
**305.530.7000** 1:17
**305.961.9451** 1:14
**305/523-5290** 27:16
**305/523-5639** 27:16
**312** 2:6 3:20
**3181** 6:21
**3184** 6:15
**320** 8:10
**324** 11:5
**33128** 1:20 27:16
**33130** 1:17

**33132** 1:14
**37** 8:1

---
**4**
**4** 11:23,23 15:2,5,7,8
  16:23 26:21
**4th** 1:14
**40** 10:17
**400** 1:20 27:15
**465** 2:9 3:21
**470** 15:6
**480-something** 15:6
**483** 12:4

---
**5**
**5** 1:5 11:23,23
**554** 2:9 3:21
**556** 16:23
**569** 14:22,24 15:8
  26:21
**570** 14:23 15:8 26:21

---
**6**
**6** 11:23
**62** 10:4,12,17 14:1
**69** 10:3

---
**7**
**7** 5:24 6:5,23,25 7:1
  11:23 12:3
**7th** 21:13
**737** 21:13
**77** 2:7 19:5
**782.04** 8:6
**787.01** 8:12
**787.01(1)(a)** 25:14
**79** 19:10

---
**8**
**8** 5:17,23 6:8,15
  12:11,17
**8N09** 1:20
**81** 10:22 11:4

---
**9**
**9** 5:18,23 6:8 12:11
  12:17
**99** 1:14 19:16