UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22414-MC-O'SULLIVAN

IN THE MATTER OF THE EXTRADITION OF
TELMO RICARDO HURTADO HURTADO

_____/

**<u>EXTRADITION CERTIFICATION AND ORDER OF COMMITMENT</u>**

These extradition proceedings were commenced by the United States pursuant to 18 U.S.C. § 3184 and the Extradition Treaty between the United States and Peru, signed on July 26, 2001, and entered into force on August 25, 2003 (hereinafter the "Treaty").

On August 29, 2008, this Court issued a complaint for the provisional arrest of Telmo Ricardo Hurtado Hurtado ("Hurtado") with a view towards extradition at the request of the United States, acting on behalf of the Government of Peru. <u>See</u> Complaint (DE# 1, 9/2/08). In that complaint, the United States alleged that Hurtado was wanted to stand trial in Peru for his involvement in the massacre of 69 villagers in the Accomarca region of Peru, in violation of section 152 of the Peruvian Criminal Code of 1924, as well as for the abduction and forced disappearance of a guide recruited to guide him through Accomarca, in violation of section 223 of the Peruvian Criminal Code of 1924 and section 320 of the Peruvian Criminal Code of 1993.

On August 29, 2008, Hurtado was arrested pursuant to an arrest warrant issued by this Court in conjunction with the issuance of the extradition complaint. <u>See</u> Return of Arrest Warrant (DE# 10, 9/10/08). Hurtado has been held without bond, pending the resolution of these extradition proceedings.

**FINDINGS**

On May 5, 2009, this Court conducted an extradition hearing pursuant to 18 U.S.C. § 3184. International extradition proceedings are governed by 18 U.S.C. § 3181 et seq. and by treaty. In applying an extradition treaty, the Court is to construe it liberally in favor of the requesting nation. See Factor v. Laubenheimer, 290 U.S. 276, 293-94, 54 S.Ct. 191, 195-96, 78 L.Ed. 315 (1933). In considering the evidence presented by the Government of Peru, as contained in the extradition documents submitted in support of the extradition request, the evidence offered by Hurtado, the Extradition Treaty between the United States and Peru and the applicable law, the Court finds that the terms of the Treaty and 18 U.S.C. § 3184 have been satisfied with respect to Hurtado's extradition to Peru.

In an extradition matter, the court does not determine the guilt or innocence of the accused, but rather determines whether the following elements have been satisfied in order to support extradition: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crime(s) for which surrender is requested is/are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. See Fernandez v. Phillips, 268 U.S. 311, 312 (1925); Hoxha v. Levi, 465 F. 3d 554, 560 (3d Cir. 2006).

**I.   Authority of the Court Over the Proceedings**

The parties agree, and this Court finds that it has subject-matter jurisdiction over

these proceedings.  See 18 U.S.C. § 3184. Section 3184 provides that:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or **any magistrate judge** authorized so to do by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or **magistrate judge**, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention . . . .

Id. (emphasis added). Magistrate judges of this Court are authorized by local rule to "[c]onduct extraditions proceedings, in accordance with Title 18, United States Code, Section 3184." S.D. Fla. Local Magistrate Rule 1(a)(3).

## II.   Jurisdiction Over the Fugitive

The parties agree, and the Court finds that it has jurisdiction over the fugitive. Section 3184, United States Code, Title 18, gives the Court jurisdiction over a fugitive found within the Court's jurisdiction who has committed crimes in a foreign nation that are covered by an extradition treaty set forth in section 3181. The extradition treaty between the United States and Peru is included in section 3181. The Court finds support in the record, that Telmo Ricardo Hurtado Hurtado, the person who appeared before the Court, is the person against whom the instant charges are pending. See Passport of Telmo Ricardo Hurtado Hurtado (Gov't Exhibit 8); Nonimmigrant Visa

3

Application of Telmo Ricardo Hurtado Hurtado (Gov't Exhibit 9). The information in the documents provided by the government match Hurtado's birthdate, place of birth and Peruvian national identification number. See (Gov't Exhibit 3 at 154).

### III.     Treaty in Full Force and Effect

The parties agree, and the Court finds support in the record, that there is an extradition treaty in full force and effect between the United States and Peru, for all purposes of the extradition proceeding. See 18 U.S.C. § 3184; see also Declaration of Heather K. McShain (Gov't Exhibit 2 at 2).

### IV.     Crime Covered by the Treaty

The Court finds support in the record, that the offenses charged satisfy the dual criminality requirement contained in Article II of the Treaty. The principle of dual criminality dictates that a fugitive may be extradited only if the acts constituting the offense are criminal in both the jurisdiction in which the fugitive is found and the jurisdiction to which the fugitive's extradition is sought. See Caplan v. Vokes, 649 F.2d 1336, 1343 (9th Cir.1981). "The dual criminality requirement ensures that the charged conduct is considered criminal and punishable as a felony in both the country requesting the suspect and the country surrendering the suspect." Ordinola v. Hackman, 478 F. 3d 588, 594 n. 7 (4th Cir. 2007) (citing extradition treaty with Peru). To determine whether dual criminality exists, an extradition court may look to federal law or the law of the state where the extradition proceeding is being held. See Hu Yau-Leung v. Soscia, 649 F.2d 914, 918 (2d Cir.1981).

Hurtado is charged in the extradition complaint with the murder of 69 villagers in

the Accomarca region of Peru, in violation of section 152 of the Peruvian Criminal Code of 1924, as well as for the abduction and forced disappearance of a guide recruited to guide him through Accomarca, in violation of section 223 of the Peruvian Criminal Code of 1924 and section 320 of the Peruvian Criminal Code of 1993. See Complaint (DE# 1, 9/2/08). The Court finds that each of these offenses are extraditable offenses listed in Article II of the Treaty. Article II provides, in part, that: "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty."

Section 152 of the Peruvian Criminal Code provides that "[c]ommittal shall be imposed on whoever has killed for fierceness or profit, or to facilitate or conceal another crime with great cruelty or perfidy, by poison, by fire or explosion or any other means capable of endangering the life or health of a great number of people." (Gov't Exhibit 3 at 37-38). The penalty for murder under Peruvian law is a minimum term of imprisonment of 25 years. Id. at 38. Murder is a crime in every state of the United States. In Florida, the crime of murder is a violation of section 782.04, Florida Statutes. Certain murders are also proscribed by federal law. See 18 U.S.C. § 1111. In Florida, the crime of murder may be punishable by a sentence of death or life imprisonment. Murder under 18 U.S.C. § 1111 may be punishable by imprisonment for any term of years or for life. Thus, murder is a criminal offense in Peru and is a violation of Fla. Stat. § 782.04 and 18 U.S.C. § 1111.

Similarly, the abduction and forced disappearance of an individual is a crime in Peru under section 223 of the Peruvian Criminal Code of 1924 and section 320 of the

Peruvian Criminal Code of 1993. Section 223 states: "[w]hoever without any right deprives another person of his freedom, in any form, shall be punished with imprisonment of no more than two (2) years and no less than one (1) month . . . ." (Gov't Exhibit 3 at 38). Section 320 states: "[t]he public officials or civil servants who deprive any person of their freedom by ordering and executing actions that result in their disappearance duly proven, shall be punished with a penalty of no less than fifteen (15) years imprisonment. . . ." Id. at 39. The Court finds that the crimes of abduction and forced disappearance under Peruvian law are equivalent to the crime of kidnaping under section 787.01, Florida Statutes.

Hurtado argues that he was charged with murder while in the line of duty and there is no comparable charge in the United States other than in a military court. The Court is not persuaded by this argument and notes that Hurtado committed the subject acts against noncombatant civilians including children and the elderly. Hurtado further argues that the dual criminality requirement is not satisfied because there is no actual charge or crime in the United States of forced disappearance. The Court rejects this argument and finds that the crime of kidnaping under Florida and federal law is equivalent to the Peruvian crime of forced disappearance. Dual criminality "does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or in other respects, the same in the two countries. **It is enough if the particular act charged is criminal in both jurisdictions.**" Collins v. Loisel, 259 U.S. 309, 312 (1922) (emphasis added). Florida defines "kidnaping" as:

6

> [F]orcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
>
> 1. Hold for ransom or reward or as a shield or hostage.
>
> **2. Commit or facilitate commission of any felony.**
>
> 3. Inflict bodily harm upon or to terrorize the victim or another person.
>
> 4. Interfere with the performance of any governmental or political function.

Fla. Stat. § 787.01 (1)(a) (emphasis added). Here the evidence supports a finding that the guide was kidnaped, as defined section 787.01 (1)(a), Florida Statutes, to assist Hurtado in locating the villagers that were eventually killed and that while, under Hurtado's control, the guide was kept against his will and was not free to leave as evidenced by the fact that Hurtado shot at the guide when he tried to flee. Thus, the dual criminality element is met with respect to the abduction and forced disappearance charges.

## V. Probable Cause that the Fugitive Committed the Offenses

The issue left for the Court to determine is whether there is probable cause to believe that Hurtado committed the offenses charged. The evidence of probable cause is contained in the Extradition Request by Peru.

The Court's responsibility in determining probable cause, as to each charged offense in an extradition proceeding, is to determine whether, under the applicable extradition treaty, there is enough evidence to sustain the charges alleged in the complaint.  See Matter of Extradition of Lahoria, 932 F. Supp. 802, 805 (N.D. Tex.

7

1996). To certify an extradition warrant, the magistrate judge need only find probable cause that the evidence is sufficient to sustain a charge. See Polo v. Horgan, 828 F. Supp. 961, 965 (S.D. Fla. 1993). In an extradition hearing, the magistrate judge is not required to find that the evidence is sufficient to convict the individual whose extradition is sought, but only whether there is "probable cause" or "reasonable grounds" to believe the individual is guilty of the crime charged. See Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925); see also Shapiro v. Ferrandina, 478 F. 2d 894, 904-05, 913-14 (2d Cir.), cert. dismissed, 414 U.S. 884, 94 S. Ct. 204, 38 L.Ed2d 133 (1973). A magistrate judge applies the same standard of probable cause in international extradition hearings as used in preliminary hearings, in federal criminal proceedings. See Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1433 (S.D. Fla. 1993).

The Court finds that there is probable cause to believe that Hurtado was in command of the Lince Siete Military Patrol of the Compañia Lince of Huamanga (hereinafter "patrol") and carried out the Quebrada Huancayocc Military Operations Plan in the Accomarca area of Peru between August 13, 1985 and August 16, 1985. (Gov't Exhibit 3 at 15; 19; 205; 237-38). On August 14, 1985, Hurtado and his military patrol headed toward Quebrada Huancayocc, Llocllapampa where they encountered a group of individuals. (Gov't Exhibit 3 at 20). Upon observing the patrol, the individuals began to flee. Id. Patrol members yelled "stop" Id. When the individuals continued fleeing, the patrol members opened fire killing five individuals. Id.

Hurtado's patrol captured additional individuals, including women, children and the elderly. (Gov't Exhibit 3 at 16; 237-42; 364). The patrol separated the men from the women and children. Id. at 364. The men and women were forced into two separate

houses. Id. at 364-65. The patrol opened fire at the houses with their machine guns. Id. at 18, 365. Hurtado threw a grenade into a room contained 13 people to finish off any wounded survivors and destroy the house. Id. at 16.[1] The houses were subsequently set on fire with the people inside. Id. at 18-19, 365. Hurtado then ordered the patrol to pick up all the spent cases to conceal evidence. Id. at 20. During the operation, in total, 62 persons were murdered on August 14, 1985. Id. at 239-41 (listing the names and ages of the deceased).

With respect to the forced disappearance charge, the evidence presented by the government shows that an individual by the name of Filomeno Chuchon Tecsi (hereinafter "guide") was delivered to Hurtado to lead the patrol to the alleged "Shining Path People's School" located in Quebrada Huancayocc, Llocllapampa. (Gov't Exhibit 3 at 22). When the guide tried to escape, Hurtado shot at the guide. Id. The guide subsequently fell into a gully. Id.

Hurtado returned to Accomarca area on September 13, 1985. (Gov't Exhibit 3 at 81 - 83). He rounded up seven possible witnesses to the August 14, 1985 killings, including a twelve-year-old child, and ordered them to go to the cemetery where he proceeded to shoot the witnesses. Id. at 81, 198. "This criminal event was witnessed by dwellers of Accomarca and by Floriano Quispe de la Cruz. . . ." Id. at 82-83.

At the extradition hearing, Hurtado argued that probable cause was lacking as to the charge that Hurtado murdered an additional seven individuals on September 13, 1985. Hurtado points out that there are no witness statements by Floriano Quispe de la

---

[1] Hurtado admitted to the deaths of twenty-five individuals, including five children, inside the house. (Gov't Exhibit 3 at 16).

Cruz in the evidence presented by the government. The Court finds that the evidence presented by the government is sufficient to support probable cause that Hurtado murdered the seven individuals on September 13, 1985 in Accomarca. "[C]ourts have consistently concluded that hearsay is an acceptable basis for a probable cause determination in the extradition context." Haxhiaj v. Hackman, 528 F.3d 282, 292 (4th Cir. 2008) (citing as examples Emami v. United States, 834 F.2d 1444, 1451 (9th Cir.1987); Escobedo v. United States, 623 F.2d 1098, 1102 (5th Cir.1980)).

In Afanasjev v. Hurlburt, 418 F.3d 1159 (11th Cir. 2005), the Eleventh Circuit affirmed the district court's denial of a petition for habeas corpus. The sole issue on appeal was whether the district court erred in finding that there was competent evidence to support the magistrate judge's finding of probable cause. The petitioners argued that the bill of indictment was deficient on several grounds:

> (1) the document was not made under oath; (2) the witness and victim statements constituted hearsay because they were recounted by the investigator; (3) the statements were not sworn or signed by the witnesses and victims; and (4) it was unclear whether the indictment was based on the investigator's personal knowledge because he never explicitly stated that he was the individual who interviewed the witnesses and victims.

Id. at 1163-64. The Eleventh Circuit rejected "[the] contention that the bill of indictment was insufficient evidence to justify [the] extradition" noting that "[f]ederal law does not require all documents submitted for extradition purposes to be made under oath." Id. at 1164. "In this case, the bill of indictment and the other Lithuanian documents were properly certified by Jonathan Floss, Vice Consul at the American Embassy in Lithuania. The unsworn indictment, therefore, was admissible, and the magistrate judge was free to consider it in determining whether to certify Appellants' extradition." Id.

Section 3190, United States Code, Title 18 governs the admissibility of documents in an extradition proceeding. Afanasjev, 418 F.3d at 1164. It states as follows:

> Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing **for all the purposes** of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

18 U.S.C. § 3190 (emphasis added). Similarly here, the documents presented by the government in support of the abduction and forced disappearance of the guide are admissible and properly before the Court. The Court finds sufficient evidence to support probable cause as to each of the charged offenses.

### VI.  Gallina Dictum

Hurtado argues that the Court should deny the government's extradition request because the extradition of Hurtado would be so egregious as to offend the Court's sense of decency. Namely, that Hurtado was previously tried before a military court and was acquitted of all murder charges stemming from the subject incident but found guilty of abuse of authority.[2] Hurtado cites to Gallina v. Fraser, 278 F. 2d 77 (2d Cir. 1960). In Gallina, two individuals who had been convicted in absentia in Italy were certified as

---

[2] The Court has previously rejected Hurtado's double jeopardy argument. See In re Extradition of Hurtado, No. 08-22414-MC, 2009 WL 1035069 (S.D. Fla. Apr. 16, 2009).

extraditable to Italy. On a petition for habeas corpus relief, the Second Circuit observed in dicta that "[it could] imagine situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the [rule of non-inquiry]."[3] Id. at 79. Nonetheless, the Second Circuit found that Gallina was not such a case and denied habeas corpus relief.

Hurtado also cites to United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1370 - 73 (S.D. Fla. 1999). In Fernandez-Morris, this Court refused to issue a certificate of extradition to the secretary of state recommending that the defendants be extradited to Bolivia. Although this Court denied the government's extradition request for failure to establish probable cause and dual criminality, it nonetheless expressed great concern over the lack of process afforded to the defendants in Bolivia:

> Given the complete lack of notice, lack of representation, the conviction in absentia, the waived right of appeal, the [Bolivian] court's apparent disregard for its own procedures and substantive law, and the unquestioning acceptance of obviously perjured testimony, this Court casts a skeptical eye on the evidence presented by the Government in this case. . . . [T]his Court need not address whether this case and the egregious set of facts this [case] presents is the sort that the Gallina court had in mind when it speculated that there may one day be a case that so shocks the conscience and sense of decency that extradition is denied on that basis alone.

Id. at 1373.

---

[3] The rule of non-inquiry "bars courts from evaluating the fairness and humaneness of another country's criminal justice system, requiring deference to the Executive Branch on such matters." Khouzam v. Attorney General of U.S., 549 F.3d 235, 253 (3d Cir. 2008).

The Gallina dictum has been cited favorably by numerous courts but never applied. See Martin v. Warden, Atlanta Pen., 993 F.2d 824, 830 n. 10 (11th Cir. 1993) (noting that "[t]his circuit never embraced the Gallina dictum. [It] explicitly held that judicial intervention in extradition proceedings based on humanitarian considerations is inappropriate. Escobedo v. United States, 623 F.2d 1098, 1107 (5th Cir.1980). Rather, humanitarian considerations are matters properly reviewed by the Department of State."). The Court adheres to the rule of non-inquiry and finds that humanitarian considerations are not proper in these proceedings. Basso v. U.S. Marshal, 278 Fed. Appx. 886 (11th Cir. 2008) (the rule of non-inquiry prevents an extradition magistrate, without exception, from assessing the receiving country's judicial system.). "It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds." Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir. 1990). Even if the Court were to consider Gallina, the conditions surrounding the extradition of Telmo Hurtado Hurtado are not "so antipathetic to a federal court's sense of decency as to require reexamination of [the rule of non-inquiry]." Gallina, 278 F. 2d at 79.

## CONCLUSIONS

Based on the foregoing, this matter is certified to the Secretary of State in order that a warrant may issue, upon the requisition of the proper authorities of Peru, for the surrender of Telmo Ricardo Hurtado Hurtado on the charges relating to the massacre of 69 villagers in the Accomarca region of Peru, in violation of section 152 of the Peruvian Criminal Code of 1924, as well as for the abduction and forced disappearance of a guide recruited to guide him through Accomarca, in violation of section 223 of the

Peruvian Criminal Code of 1924 and section 320 of the Peruvian Criminal Code of 1993, according to the provisions of the Treaty between the United States and Peru.

It is hereby

ORDERED AND ADJUDGED, that Telmo Ricardo Hurtado Hurtado be committed to the custody of the United States Marshal, or his authorized representative, to be confined in appropriate facilities and to remain there until he is surrendered to Peru pursuant to applicable provisions of the Treaty and law; and it is further

ORDERED AND ADJUDGED that the United States Attorney for this judicial district shall forward a copy of this Certification and Order, together with a copy of all transcripts of proceedings and copies of documents received into evidence in this matter to the Secretary of State.

DONE AND ORDERED, in Chambers, at Miami, Florida, this **13th** day of May, 2009.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record
U.S. Marshals (2 certified)